*In re* N.R.L., a Minor (The People of the State of Illinois, Petitioner-Appellee, v. N.R.L., Respondent-Appellant).*

Second District   No. 2—88—1107

Opinion filed July 18, 1990.

---

*The above opinion is the text of the opinion withdrawn from publication as noted in 199 Ill. App. 3d 1024.

G. Joseph Weller and Robert C. Cooper, both of State Appellate Defender's Office, of Elgin, for appellant.

Gary V. Johnson, State's Attorney, of Geneva (William L. Browers and David A. Bernhard, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

PRESIDING JUSTICE UNVERZAGT delivered the opinion of the court:

Respondent, N.R.L., a minor, appeals from an order of the circuit court of Kane County finding that he violated the terms of his probation.

On April 1, 1987, N.R.L. was adjudged a delinquent based on allegations of battery and mob action, and he was placed on probation for a period of 12 months. On July 15, 1987, he was again adjudged delinquent as the result of two incidents of criminal damage to property. He was ordered to pay restitution, and the terms of his probation remained unchanged.

On March 8, 1988. the State filed a petition to revoke N.R.L.'s

probation alleging that he had committed an aggravated battery by striking his high school teacher. On March 18, 1988, the State filed a petition to adjudicate him delinquent based on the same action. There was a single hearing on the two petitions.

At the hearing, Bernice Roome testified that she was a teacher at Larkin High School. On February 8, 1988, N.R.L. was a student in her freshmen English class. On that date, Ms. Roome handed out computerized registration sheets to the students. She advised them not to fold the sheets; N.R.L., however, folded his. She told him again not to fold the paper. At that point he cursed, told her he could do what he pleased with the paper, and folded it again. She held her hand out and asked him for the paper. He refused. As she reached for the paper, he cursed again, jumped up, raised his right fist, hit her in the chest, and knocked her to the ground. She sustained bruises and a fracture of the right foot.

N.R.L. testified that when Ms. Roome asked him for the paper, he held the paper away from her. She reached for the paper and grabbed his wrist. Then she grabbed his shirt and pulled it up. He stood up and pulled his arm back to hit her, but he stopped himself. They had a tug-of-war with the paper, and when it ripped Ms. Roome fell down. He said that he did not hit her.

The defense also called four students who were present in the classroom at the time of the incident. Their testimony basically corroborated N.R.L.'s testimony. They all testified that there was an argument about the paper and that N.R.L. had not hit Ms. Roome. They said that she fell when the paper ripped or when N.R.L. pulled his hand from her grasp.

In rebuttal, the State called another student who had been present at the time of the incident. He said that N.R.L. hit Ms. Roome in the shoulder with a closed fist and knocked her down.

After hearing the evidence, the trial court said:

"Court *** finds that the evidence presented and put on the scales of justice are such that I cannot raise this issue up to beyond a reasonable doubt, it's just not there; but I do believe that it's more probably true than not true that [N.R.L.] committed the offense of battery and aggravated battery in that classroom on February the 8th, and I will therefore find him to have violated the terms of his probation."

The court extended N.R.L.'s probation to July 24, 1989, and sentenced him to 14 days in the Kane County Juvenile Detention Center. This appeal ensued.

The minor first contends that the trial court's finding that he vio-

lated the terms of his probation is against the manifest weight of the evidence. He asserts that, by finding for him on the delinquency petition, the court necessarily affirmed his version of the confrontation "as there was no middle ground in the two versions." He concludes:

> "The court could not simultaneously find that the minor was innocent and that he struck Ms. Roome. The only logical conclusion consistent with the court's finding that the minor did not strike Ms. Roome, is that nonetheless, the minor caused her great bodily harm by engaging in a tug-of-war with the piece of paper."

He asserts that, even if Ms. Roome suffered bodily harm, the court's findings indicate that the State failed to prove the necessary element of intent.

■ The minor's argument is based on a faulty premise. He presumes that the court found that he was "innocent" and that he did not strike Ms. Roome. There were no such findings. To the contrary, the court's statement, quoted above, indicates that the court believed the testimony of Ms. Roome and not that of the minor and the defense witnesses. The court found, by a preponderance of the evidence, that the minor had committed aggravated battery. The fact that the court found that the evidence did not prove the offense beyond a reasonable doubt is not legally inconsistent.

■ Pursuant to section 5—18 of the Juvenile Court Act of 1987, the standard of proof at an adjudicatory hearing is the same as that applicable to criminal proceedings (Ill. Rev. Stat. 1987, ch. 37, par. 805—18), that is, the offense must be proved beyond a reasonable doubt (Ill. Rev. Stat. 1987, ch. 38, par. 3—1). The standard of proof at a probation revocation hearing is lower; the State is required to prove the violation only by a preponderance of the evidence. (Ill. Rev. Stat. 1987, ch. 37, par. 805—25(3).) The same evidence may be sufficient to prove an offense by a preponderance of the evidence yet be insufficient to prove the same offense beyond a reasonable doubt.

We would also point out that an acquittal on a criminal charge does not prove that the defendant is innocent; it merely proves the existence of a reasonable doubt as to his guilt. *United States v. One Assortment of 89 Firearms* (1984), 465 U.S. 354, 361, 79 L. Ed. 2d 361, 368, 104 S. Ct. 1099, 1104.

■ The evidence in this case was sufficient to prove the offense by a preponderance of the evidence. The minor was charged with committing an aggravated battery in violation of section 12—4(b)(3) of the Criminal Code of 1961 (Ill. Rev. Stat. 1987, ch. 38, par. 12—4(b)(3)). A person commits an aggravated battery under this section if

he intentionally or knowingly without legal justification and by any means causes bodily harm to an individual knowing that the individual harmed is a teacher. There is no question that Ms. Roome is a teacher. She testified that the minor raised his right fist, struck her in the chest, and knocked her to the ground. As a result of the incident she suffered bruises and a fracture of the foot. Her testimony that the minor struck her was corroborated by a student eyewitness. Ms. Roome's testimony that the minor raised his fist and struck her was sufficient to prove that he acted intentionally.

■ There was conflicting testimony; the minor and four other student eyewitnesses testified that the minor never struck Ms. Roome. The trial court resolved this conflict in the State's favor. The resolution of conflicting evidence is the job of the trier of fact, and his decision will be accepted on review unless it is clearly unreasonable. (*People v. McGrew* (1984), 128 Ill. App. 3d 464, 470-71.) We are not persuaded that the trial court's decision was unreasonable.

The minor also contends that the doctrine of collateral estoppel and the constitutional guarantee against double jeopardy barred the trial court from "redetermining" his guilt on the aggravated battery charge for purposes of the probation revocation after it had previously acquitted him on the same charge. We disagree.

■ ■ The doctrine of collateral estoppel is embodied in the double jeopardy clause. (*Ashe v. Swenson* (1970), 397 U.S. 436, 445, 25 L. Ed. 2d 469, 476, 90 S. Ct. 1189, 1195.) Application of the doctrine means that when an issue of ultimate fact has once been determined by a valid and final judgment that issue cannot again be litigated between the same parties in any future suit. (*Ashe*, 397 U.S. at 443, 25 L. Ed. 2d at 475, 90 S. Ct. at 1194.) The doctrine applies in criminal proceedings to protect a defendant who has been acquitted "from having to 'run the gantlet' a second time." (*Ashe*, 397 U.S. at 445-46, 25 L. Ed. 2d at 476-77, 90 S. Ct. at 1195, quoting *Green v. United States*, (1957), 355 U.S. 184, 190, 2 L. Ed. 2d 199, 206, 78 S. Ct. 221, 225.) The double jeopardy clause forbids a second trial for the purpose of affording the prosecution another opportunity to supply evidence that it failed to muster in the first proceeding; this prohibition, lying at the core of the clause's protections, prevents the State from honing its trial strategies and perfecting its evidence through successive attempts at conviction. *Tibbs v. Florida* (1982), 457 U.S. 31, 41, 72 L. Ed. 2d 652, 661, 102 S. Ct. 2211, 2218.

■ We do not believe that collateral estoppel and double jeopardy principles have any application to this case. The essence of these principles is that the State, having once failed to prove an offense, does

not get a second chance. In this case there was one hearing, one opportunity for the State to present its evidence. Although the trial court was asked to answer two questions based on that evidence, we fail to see how this consolidated proceeding forced the minor to "run the gantlet" twice. The minor has not complained that consolidating the proceedings was improper in any sense.

In most of the cases relied by the minor, the State attempted to relitigate the ultimate facts at a second proceeding. Although the proceedings may have differed in their purposes, the same issues were in dispute in the second proceeding that had been determined in the first proceeding.

In *Ashe v. Swenson* (1970), 397 U.S. 436, 25 L. Ed. 2d 469, 90 S. Ct. 1189, the defendant was charged with the separate armed robberies of six participants in a poker game. The defendant went to trial on the charge of robbing one of the poker players, and he was acquitted. There was no question that a robbery had occurred; the only issue had been the identity of the robber. Subsequently, the State tried the defendant for the robbery of another of the six men; this time the defendant was convicted. The Supreme Court reversed. The court found that the only issue in dispute at the first trial was whether the defendant was the robber and that this question had been answered in the negative. Collateral estoppel barred the State from relitigating that issue at a second trial.

In *People v. Grayson* (1974), 58 Ill. 2d 260, the defendant was on probation when he was charged with armed robbery. He was acquitted after a bench trial. Subsequently, the State brought a petition to revoke the defendant's probation based on the same armed robbery. There was a hearing, and the trial court found the evidence sufficient to prove a probation violation. The Illinois Supreme Court reversed, holding that collateral estoppel barred the State from relitigating the same issue which had been in dispute at the criminal trial. The court said that the differences in the burdens of proof between a criminal trial and a probation revocation hearing "cannot fairly serve to permit relitigation of the identical issue upon the same evidence." *Grayson*, 58 Ill. 2d at 265.

In *People v. Kondo* (1977), 51 Ill. App. 3d 874, the defendant was on probation when he was charged with unlawful use of weapons. Subsequently, the State filed a petition to revoke the defendant's probation based on the same offense. The probation revocation hearing was first. The court found that the gun had been broken down into a nonfunctioning state and denied the petition to revoke. The defendant then filed a motion to dismiss the pending criminal charge, and the

trial court granted the motion. The appellate court affirmed, holding that the State, having failed to prove the issue of ultimate fact at the revocation hearing, was barred from attempting to relitigate the identical issue upon the same evidence at the criminal trial.

These cases are readily distinguishable from the case at bar. In each of these cases, the State attempted to prove at a second proceeding what it had failed to prove at the first proceeding. In the case at bar, there simply was no second attempt to prove the facts.

If the two petitions at issue in this case were litigated in separate proceedings, the results might have been different. Under *Grayson*, if the petition to adjudicate were tried first and the minor were acquitted, then the State would have been collaterally estopped from proceeding on the petition to revoke. As *Grayson* and *Kondo* make clear, if the State fails to prove an issue of ultimate fact at one criminal proceeding, it is barred from relitigating the same issue at a second criminal proceeding. In the instant case, there was no relitigation.

The minor also relies on *People v. Frias* (1983), 99 Ill. 2d 193, for the proposition that collateral estoppel can apply to two decisions rendered in the same proceeding. In *Frias*, the defendant was charged with two counts of murder and one count of armed violence predicated on murder. The charges all stemmed from the killing of one person. The jury found the defendant not guilty on the murder charges but guilty on the armed violence charge. The Illinois Supreme Court found that the verdicts were legally inconsistent; the not guilty verdicts meant that the State had failed to prove that the defendant committed murder, yet the guilty verdict on armed violence meant that the State had proved that the defendant committed murder, as murder was an essential element of the armed violence charge. The court held that collateral estoppel applied to prevent rendition of legally inconsistent verdicts in a single proceeding. The court reasoned that if the charges had been tried separately, a not guilty verdict on the first charge would have collaterally estopped the State from proceeding on the second charge because the ultimate issue of fact was the same under both charges.

We find *Frias* distinguishable as well. In the instant case, the trial court's decisions on the petition to revoke probation and the petition to adjudicate the minor delinquent were not legally inconsistent. The verdicts in *Frias* were inconsistent. In *Frias*, the same standard of proof, proof beyond a reasonable doubt, was applicable to both charges against the defendant; the jury's verdicts indicated that the murder both had and had not been proved. In the instant case, the trial court found that the State had proved the aggravated battery by

a preponderance of the evidence; although it also found that the State had not proved the offense beyond a reasonable doubt, there was no inconsistency.

Finally, we would note that the minor's entire collateral estoppel and double jeopardy argument rests on the fact that the trial court announced its findings on the petition to adjudicate before announcing its findings on the petition to revoke. Logically, therefore, if the trial court had announced its finding on the petition to revoke first, presumably the minor would have no complaint. We do not believe that a double jeopardy violation could be based on such mere happenstance.

For the foregoing reasons, the judgment of the circuit court of Kane County is affirmed.

Affirmed.

DUNN and McLAREN, JJ., concur.