Docket No. 102003.

# IN THE
# SUPREME COURT
# OF
# THE STATE OF ILLINOIS

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. DANNY COLON, Appellee.

*Opinion filed March 22, 2007.*

JUSTICE GARMAN delivered the judgment of the court, with opinion.

Chief Justice Thomas and Justices Freeman, Fitzgerald, Kilbride, Karmeier, and Burke concurred in the judgment and opinion.

## OPINION

Defendant, Danny Colon, pleaded guilty in the circuit court of Cook County to one count of aggravated unlawful use of a weapon (720 ILCS 5/24–1.6 (West 2002)) and was sentenced to 12 months' probation (730 ILCS 5/5–6–2(b)(2) (West 2002)). Subsequently, the State charged defendant with unlawful use of a weapon by a felon (720 ILCS 5/24–1.1 (West 2002)) and filed a petition to revoke his probation (730 ILCS 5/5–6–4 (West 2002)). At defense counsel's request, the trial court consolidated defendant's bench trial on the unlawful use of a weapon charge with his probation revocation hearing. The court found defendant not guilty of unlawful use of a weapon by a felon, but determined that he violated his probation. In a posttrial motion, defense counsel argued that requesting

consolidation of the proceedings constituted ineffective assistance of counsel. The trial court denied the motion and sentenced defendant to 20 months' imprisonment. Defendant appealed, and the appellate court reversed and remanded with one justice dissenting. No. 1–04–2778 (unpublished order under Supreme Court Rule 23). For the reasons that follow, we reverse the judgment of the appellate court and affirm the judgment of the circuit court.

BACKGROUND

On February 19, 2004, defendant pleaded guilty to one count of aggravated unlawful use of a weapon (720 ILCS 5/24–1.6 (West 2002)) and was sentenced to 12 months' probation (730 ILCS 5/5–6–2(b)(2) (West 2002)). On April 19, 2004, defendant was placed under arrest after a police officer allegedly saw him in possession of a handgun. He was subsequently charged with unlawful use of a weapon by a felon (720 ILCS 5/24–1.1 (West 2002)) and with violating his probation (730 ILCS 5/5–6–4 (West 2002)).

When defendant appeared in court on July 8, 2004, defense counsel informed the court that defendant was prepared to proceed simultaneously with his bench trial on the unlawful use of a weapon charge and his probation revocation hearing. The State consented to consolidation, and the court allowed the parties to proceed.

The State called Sergeant Charles Glynn and Officer Scott Blasz of the Chicago police department to testify. Sergeant Glynn stated that he had been a Chicago police officer for 18 years. On April 19, 2004, at approximately 1:45 a.m., he was approaching a building at 2803 North Kedzie Avenue in Chicago to use its porch for surveillance purposes. As Sergeant Glynn approached the building, he saw defendant standing in the building's archway with a black, semiautomatic pistol in his right hand. Sergeant Glynn was approximately 10 feet away from defendant when he made this observation, and the surrounding area was well lit. While he could not see the pistol's handle, he could see its barrel.

According to Sergeant Glynn, when he saw the pistol, he drew his weapon, announced that he was a police officer, and ordered defendant to drop the pistol. Defendant turned and faced him and fled out of the archway onto Kedzie Avenue. Sergeant Glynn chased

defendant. While in pursuit, he described defendant and his direction of flight over the police radio.

Defendant ran through a gangway and into an alley, at which point he hopped over a waist-high fence and entered another gangway. Sergeant Glynn was unable to pursue defendant over the fence, but he watched defendant enter the gangway from a distance of approximately 20 feet. Under the alley lighting, which extended into the gangway, he saw defendant hold up the gun and depress the magazine release. The magazine fell to the ground, and defendant continued to flee.

Sergeant Glynn subsequently recovered the magazine and determined that it contained nine-millimeter rounds. Shortly thereafter, he was notified over the police radio that defendant had been apprehended. The pistol was never recovered.

Officer Blasz testified that on April 19, 2004, he was in a squad car with his partner Mark DuBose when they received the description of defendant and his direction of flight over the police radio. After driving a short distance, they passed an alley and saw a person fitting the description they received over the radio. When the person, defendant, began to run, they cut him off with their squad car and placed him under arrest. At that point, Sergeant Glynn arrived on the scene.

Following Officer Blasz's testimony, the parties stipulated that defendant was convicted of aggravated unlawful use of a weapon on February 19, 2004. The State and the defense then rested.

After brief closing arguments, the trial court reviewed the differing burdens of proof for the substantive charge and the probation violation. The court determined that the State had failed to prove beyond a reasonable doubt that defendant had committed the offense of unlawful use of a weapon by a felon, but that the State had met its burden of proving by a preponderance of the evidence that defendant had possessed firearm ammunition in violation of the terms of his probation. Accordingly, the court set a date to sentence defendant for his probation violation.

On September 7, 2004, prior to sentencing, defense counsel presented an oral posttrial motion arguing that his request to consolidate the bench trial with the probation revocation hearing

constituted ineffective assistance of counsel. Defense counsel asserted that if he had not requested consolidation, the court's probation violation finding would have been barred by principles of collateral estoppel and double jeopardy, because it would have been impermissible to relitigate the same issue of fact decided in a bench trial on the substantive charge at a subsequent probation revocation hearing.

During the course of the hearing on defendant's posttrial motion, the following colloquy occurred:

> "COURT: Is it not the State's election as to whether they want to proceed–you make that argument as if you had the benefit of choosing to go to the underlying case or to the probation violation. And, in fact, you do not. It's the State's choice.
>
> DEFENSE COUNSEL: But in this case, the State choose [*sic*] to go on the main case, and I said[,] your Honor, why don't we just try them together. We could get a transcript and see that's what happened. That's what happened.
>
> COURT: Did the State elect on the underlying case?
>
> STATE: I think we had–let me check. The State had elected on the case in chief.
>
> COURT: I agree with you. And we don't have the transcript because nobody got it?
>
> DEFENSE COUNSEL: As to that portion of it, nobody got it."

Ultimately, the court denied defendant's posttrial motion and sentenced him to 20 months' imprisonment.

Defendant appealed, and the appellate court reversed the judgment of the circuit court with one justice dissenting. No. 1–04–2778 (unpublished order under Supreme Court Rule 23). Initially, the appellate court majority rejected defendant's argument that the evidence presented at trial was insufficient to prove that he violated his probation by unlawfully possessing firearm ammunition as a felon. The majority held that, based on the observations of Sergeant Glynn, an 18-year veteran of the Chicago police department, it was reasonable for the trial court to infer that the nine-millimeter rounds ejected from the semiautomatic pistol defendant was carrying

were "firearm ammunition" as defined by section 1.1 of the Firearm Owners Identification Card Act (430 ILCS 65/1.1 (West 2002)).

Next, the majority rejected defendant's argument that the trial court's finding that he violated his probation was barred by principles of collateral estoppel and double jeopardy based on his acquittal of the substantive charge. Citing this court's decision in *People v. Grayson*, 58 Ill. 2d 260, 265 (1974), the court noted that *Grayson* prohibits the relitigation of an issue in a probation revocation hearing that has been litigated in a previous trial, regardless of the differences in the burdens of proof in the two proceedings. The court observed, however, that where a defendant's trial and probation revocation hearing are consolidated, concerns of collateral estoppel and double jeopardy do not arise, and the defendant may be acquitted of the substantive charge but still be found to have violated the terms of his probation. Accordingly, the court held that because defendant's trial and probation revocation hearing were consolidated, the trial court's finding that defendant violated his probation was not barred by principles of collateral estoppel and double jeopardy.

Finally, the appellate court addressed defendant's argument that defense counsel provided ineffective assistance of counsel by requesting consolidation of the bench trial and probation revocation hearing. The court noted that if defendant had been acquitted of the substantive charge in an earlier, separate proceeding, instead of in a consolidated proceeding, *Grayson* would have barred the trial court's violation-of-probation finding. Accordingly, the court determined that there was a reasonable probability that, but for defense counsel's request for consolidation, the outcome would have differed for defendant. The court acknowledged that there was nothing in the record to indicate that defense counsel was aware prior to his request for consolidation that the State had elected to try defendant on the substantive charge before proceeding with his probation revocation hearing. However, the court found this fact immaterial to the ineffectiveness inquiry, reasoning that the possibility the State would have proceeded first on the substantive charge was sufficient to support defendant's ineffective assistance of counsel claim. In addition, the court declined to characterize defense counsel's decision to consolidate the proceedings as a matter of trial strategy. In light of these considerations, the court concluded that defense counsel's

request to consolidate the proceedings amounted to ineffective assistance of counsel, because it fell below an objective standard of reasonableness and was prejudicial to defendant. The court reversed the judgment of the trial court and remanded the cause for a new probation revocation hearing.

In dissent, Presiding Justice Quinn concluded that defense counsel's request for a consolidated proceeding was a matter of trial strategy. No. 1–04–2778 (unpublished order under Supreme Court Rule 23) (Quinn, P.J., dissenting). In addition, he criticized the majority for relying on a poorly formulated rule of decision – *i.e.*, that "any defense attorney who *requests* a consolidated hearing will receive a second bite at the apple upon appeal of any finding of violation of probation as all such requests constitute *per se* ineffective assistance of counsel." (Emphasis in original.) Justice Quinn characterized this rule as "clearly wrong."

The State filed a petition for leave to appeal with this court, which we allowed. 210 Ill. 2d R. 315.

ANALYSIS

The State challenges the appellate court's determination that defense counsel provided ineffective assistance by requesting the consolidation of defendant's bench trial with his probation revocation hearing. Defendant maintains that the request for consolidation constituted ineffective assistance and argues in the alternative that the evidence presented to the trial court was insufficient to prove that he violated his probation. We first address whether defendant was denied the effective assistance of counsel.

I. Ineffective Assistance of Counsel

In determining whether a defendant was denied the effective assistance of counsel, we apply the familiar two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052 (1984), and adopted by this court in *People v. Albanese*, 104 Ill. 2d 504 (1984). To prevail on a claim of ineffective assistance of counsel, a defendant must show both that counsel's performance was deficient and that the deficient performance prejudiced the defendant. *Strickland*, 466 U.S. at 687, 80 L. Ed. 2d at 693, 104 S. Ct. at 2064

(1984). More specifically, the defendant must demonstrate that counsel's performance was objectively unreasonable under prevailing professional norms and that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694, 80 L. Ed. 2d at 698, 104 S. Ct. at 2068. A reasonable probability that the result would have been different is a probability sufficient to undermine confidence in the outcome of the proceeding. *Strickland*, 466 U.S. at 694, 80 L. Ed. 2d at 698, 104 S. Ct. at 2068. The failure to satisfy either prong of the *Strickland* test precludes a finding of ineffective assistance of counsel. *Strickland*, 466 U.S. at 697, 80 L. Ed. 2d at 699, 104 S. Ct. at 2069.

The State articulates two reasons why defendant was not denied the effective assistance of counsel. Initially, the State claims that defense counsel's decision to request the consolidation of the bench trial and the probation hearing was a valid strategic choice. The State points out that, pursuant to *Strickland*, a defendant must overcome a strong presumption that defense counsel's actions were motivated by strategic considerations. Here, argues the State, there were three possible outcomes to the consolidated proceeding. First, defendant could have been acquitted of the substantive charge and found not to have violated his probation, in which case he would have suffered no prejudice as a result of the consolidation and would have benefitted from the quicker, and possibly less costly, disposition of the proceedings. Second, defendant could have been convicted of the substantive charge and found to have violated his probation, in which case he also would have suffered no prejudice and would have benefitted in the same manner described above. Third, as occurred in the instant case, defendant could have been acquitted of the substantive charge but found to have violated his probation. The State argues that the latter scenario, "where the evidence falls into the interstices between preponderance and beyond a reasonable doubt," is comparatively rare and difficult to reasonably anticipate. Thus, "in terms of percentages ***, a defense counsel whose client is facing both substantive and [violation-of-probation] charges has clear strategic considerations in favor of consolidation."

Next, the State contends that defendant cannot demonstrate that he was prejudiced by the consolidation of the bench trial and the

probation revocation hearing. According to the State, to show prejudice, defendant must demonstrate that if he had objected to consolidation, the trial court would likely have sustained his objection. The State reasons that defendant cannot make such a showing because there is nothing inherent in consolidation itself that is prejudicial to a defendant, as principles of double jeopardy and collateral estoppel have no application in the context of a consolidated proceeding. Moreover, even if defense counsel had objected to consolidation and the trial court had sustained his objection, the State could still have elected to proceed with the probation revocation hearing before the bench trial on the substantive charge. In that case, the finding that defendant violated his probation would not have been problematic.

In addition to arguing that defendant cannot meet either prong of the *Strickland* test, the State asserts that the appellate court's rationale in this case invites defense counsel to seek out consolidation, either by requesting it or by not objecting to it, and then argue their own ineffectiveness if the defendant is acquitted of the substantive charge but found to have committed a probation violation. The State suggests that, under the approach taken by the appellate court, defense counsel has a strong incentive to intentionally provide ineffective assistance of counsel, which "perverts the salutary principles established in *Strickland*."

Alternatively, the State urges us to overrule *People v. Grayson*, 58 Ill. 2d 260, which makes it impermissible for the State to proceed with a probation revocation hearing after a defendant has been acquitted of the substantive charge in a separate trial. The State argues that *Grayson* is out of step with more recent United States Supreme Court decisions that clarify that an acquittal in a criminal case does not preclude the government from relitigating an issue in a subsequent action governed by a lower standard of proof. According to the State, these decisions call into question the continuing viability of *Grayson*.

In response, defendant, represented by the same counsel who represented him at trial and before the appellate court, emphasizes that if defense counsel had understood the applicable law, he would not have requested consolidation of the bench trial with the probation revocation hearing. Defendant's brief candidly states that "[a]lthough

counsel is very experienced and usually fully researches controlling issues, here, he did not do sufficient research, and hence, he made an error." Specifically, defense counsel "did not realize that *Grayson* only applied when the case-in-chief and the violation of probation [are] tried separately and did not control where the cases are tried together." Defendant maintains that defense counsel knew the State intended to proceed with its case in chief before proceeding with the probation revocation hearing. In light of this fact, and considering that defendant was ultimately acquitted of the substantive charge but found to have violated his probation, defendant claims that defense counsel acted ineffectively in requesting consolidation of the proceedings.

Defendant further argues that the appellate court's rationale does not encourage the purposeful injection of error into a case by defense counsel. According to defendant, it is well known that lawyers go to great lengths to avoid accusations of ineffectiveness, and this in itself is an adequate safeguard against the intentional ineffectiveness posited by the State.

We first address the State's invitation to overrule *People v. Grayson*, as the rationale of *Grayson* lies at the root of defendant's ineffective assistance of counsel claim. In *Grayson*, the defendant pleaded guilty to armed robbery and was sentenced to five years' probation. *Grayson*, 58 Ill. 2d at 261. Subsequently, he was indicted for another armed robbery and acquitted in a bench trial. *Grayson*, 58 Ill. 2d at 261. The State then filed a petition to revoke the defendant's probation, alleging the second armed robbery as the basis for the revocation. *Grayson*, 58 Ill. 2d at 262. Based on evidence that was substantially the same as the evidence presented at the bench trial, a different trial court determined that the defendant violated his probation and sentenced him to a term of three to eight years' imprisonment on the original armed robbery conviction. *Grayson*, 58 Ill. 2d at 262. The appellate court affirmed. *Grayson*, 58 Ill. 2d at 262. This court reversed the judgments of the appellate court and the trial court. *Grayson*, 58 Ill. 2d at 265.

In arguing that his probation revocation should be reversed, the defendant relied on *Ashe v. Swenson*, 397 U.S. 436, 25 L. Ed. 2d 469, 90 S. Ct. 1189 (1970). There, the United States Supreme Court determined that it was a violation of the principle of collateral

estoppel embodied in the fifth amendment guarantee against double jeopardy to try the defendant for the separate armed robberies of two participants in a poker game. *Grayson*, 58 Ill. 2d at 262-63, citing *Ashe v. Swenson*, 397 U.S. at 445-47, 25 L. Ed. 2d at 476-77, 90 S. Ct. at 1195-96. The Court reasoned that, based on the evidence presented, the jury's verdict in the defendant's first trial amounted to a finding that the defendant was not one of the robbers. *Grayson*, 58 Ill. 2d at 262-63, citing *Ashe v. Swenson*, 397 U.S. at 445-47, 25 L. Ed. 2d at 476-77, 90 S. Ct. at 1195-96.

This court accepted the defendant's contention that, as in *Ashe*, the defendant's initial acquittal on the charge of armed robbery amounted to a determination that he was not one of the robbers. *Grayson*, 58 Ill. 2d at 265. The court acknowledged that, in a criminal trial, the State must prove the defendant guilty beyond a reasonable doubt, while in a probation revocation hearing, the State must only prove the probation violation by a preponderance of the evidence. *Grayson*, 58 Ill. 2d at 264. However, the court was "not persuaded that the difference in the burden of proof between a criminal trial and a probation revocation proceeding should dictate the result" of the case (*Grayson*, 58 Ill. 2d at 264), as "those differences cannot fairly serve to permit relitigation of the identical issue upon the same evidence" (*Grayson*, 58 Ill. 2d at 265). The court noted its concern that "[a]lthough proceedings may be civil in form, they may be criminal in nature [citation], and the individual facing probation revocation may lose his liberty just as swiftly and surely as a defendant in a criminal case." *Grayson*, 58 Ill. 2d at 265. Applying the rationale of *Ashe*, the court concluded that "[o]nce the ultimate and only disputed fact of identity had been determined by a final and valid judgment, the State could not constitutionally hale defendant before a new court in a criminal proceeding or a probation revocation proceeding and litigate that issue again." *Grayson*, 58 Ill. 2d at 265, citing *Ashe*, 397 U.S. at 446, 25 L. Ed. 2d at 477, 90 S. Ct. at 1195.

After this court decided *Grayson*, the appellate court was presented with the question of whether *Grayson*'s rationale was applicable where the substantive charge against a defendant and the defendant's alleged probation violation were addressed in a single proceeding. See *In re N.R.L.*, 200 Ill. App. 3d 820 (1990); *People v. Motta*, 223 Ill. App. 3d 182 (1991).

In *N.R.L.*, the appellate court held that principles of double jeopardy and collateral estoppel did not bar the trial court from determining in the same proceeding that the evidence was insufficient to adjudicate the minor respondent delinquent for committing aggravated battery but sufficient to find that the respondent violated the terms of his probation by committing aggravated battery. *N.R.L.*, 200 Ill. App. 3d at 824-25. In distinguishing *Grayson*, the appellate court noted that, in *Grayson*, "the State attempted to prove at a second proceeding what it had failed to prove at the first proceeding," whereas, "[i]n the case at bar, there simply was no second attempt to prove the facts." *N.R.L.*, 200 Ill. App. 3d at 826.

*Motta*, decided shortly after *N.R.L.*, rejected the defendant's argument that once a jury determined he was entrapped, and was therefore not guilty of possession of a controlled substance with the intent to deliver, the doctrines of double jeopardy and collateral estoppel barred the trial court from finding that he violated his probation. *Motta*, 223 Ill. App. 3d at 184. Citing *N.R.L.*, the appellate court stated that "[w]here the criminal trial and the revocation hearing are held simultaneously, double jeopardy and collateral estoppel concerns do not arise and the defendant may be acquitted of the criminal charge but still be found to have violated the terms of his probation." *Motta*, 223 Ill. App. 3d at 184. The court determined that *Grayson* was inapplicable, because, there, the probation revocation hearing took place after the jury had acquitted the defendant of the substantive charge. *Motta*, 223 Ill. App. 3d at 184.

The appellate court's interpretation of *Grayson* in *N.R.L.* and *Motta* set the stage for the type of ineffective assistance of counsel claim at issue in this case, which was first addressed in *People v. Porter*, 241 Ill. App. 3d 116 (1993). In *Porter*, the defendant pleaded guilty to unlawful possession of heroin with intent to deliver and was sentenced to 30 months' probation. *Porter*, 241 Ill. App. 3d at 116. Subsequently, he was charged with committing the offense of unlawful delivery of cocaine within 1,000 feet of school property, and the State filed a petition to revoke his probation. *Porter*, 241 Ill. App. 3d at 116. When the State requested that the jury trial on the substantive charge and the hearing on the petition to revoke probation be heard at the same time, defense counsel did not object. *Porter*, 241 Ill. App. 3d at 116.

-11-

Following the defendant's trial, the jury retired to deliberate, and the court indicated it would rule on the petition to revoke after the jury delivered its verdict. *Porter*, 241 Ill. App. 3d at 116-17. The jury returned a verdict of not guilty for the offense of unlawful delivery of a controlled substance within 1,000 feet of school property. *Porter*, 241 Ill. App. 3d at 117. After the jury was excused, the trial court found that the State had proved by a preponderance of the evidence that the defendant violated the terms of his probation. *Porter*, 241 Ill. App. 3d at 117.

On appeal, the defendant argued that his trial counsel was ineffective for failing to object to the consolidation of the jury trial with the probation revocation hearing. *Porter*, 241 Ill. App. 3d at 117. The appellate court agreed and reversed the order of the trial court revoking the defendant's probation. *Porter*, 241 Ill. App. 3d at 119.

According to the appellate court, the jury must have determined that the defendant did not deliver the cocaine, because that was the only material issue of fact in dispute. *Porter*, 241 Ill. App. 3d at 118. Thus, the trial court's determination that the defendant did deliver the cocaine amounted to a "differing determination on the same issue of ultimate fact." *Porter*, 241 Ill. App. 3d at 118. Applying *Grayson*, the appellate court reasoned that "had the instant defendant been acquitted of the underlying offense first, the proceeding concerning the probation revocation would have been barred by the principle of collateral estoppel." In light of this consideration, if defense counsel had objected to the consolidation of the two proceedings, there was a reasonable probability that the result would have differed. *Porter*, 241 Ill. App. 3d at 118. The appellate court also rejected the State's argument that defense counsel's decision not to object was a matter of trial strategy. *Porter*, 241 Ill. App. 3d at 118. Accordingly, the court concluded that defense counsel was ineffective. *Porter*, 241 Ill. App. 3d at 118.

The appellate court was again presented with a *Grayson*-based ineffective assistance of counsel claim in *In re A.V.*, 285 Ill. App. 3d 470 (1996). There, under analogous circumstances, a divided appellate panel held that defense counsel, consisting of two law students and two supervising attorneys from a law school clinic, provided ineffective assistance in failing to object to the State's

motion to consolidate the minor respondent's delinquency and probation revocation hearings. *A.V.*, 285 Ill. App. 3d at 471.

In *A.V.*, the respondent was adjudicated delinquent and sentenced to two years' probation for trespassing into and possessing a stolen vehicle. *A.V.*, 285 Ill. App. 3d at 471. Subsequently, he was charged in a delinquency petition with five criminal offenses arising from a shooting incident, and the State filed a petition to revoke his probation. *A.V.*, 285 Ill. App. 3d at 471. The trial court granted the State's motion to consolidate the hearings on the delinquency petition and the probation violation without objection from defense counsel. *A.V.*, 285 Ill. App. 3d at 471. Subsequently, the court found the respondent not guilty of the charges alleged in the delinquency petition, but found that the State had proved by a preponderance of the evidence that the respondent violated the terms of his probation. *A.V.*, 285 Ill. App. 3d at 471.

On appeal, the respondent argued that he received ineffective assistance of counsel when defense counsel failed to object to the consolidated hearing. *A.V.*, 285 Ill. App. 3d at 472. The respondent relied on *Porter*, which a majority of the appellate court found persuasive. *A.V.*, 285 Ill. App. 3d at 472-73. The majority concluded that defense counsel's failure to object to consolidation fell below an objective standard of reasonableness. *A.V.*, 285 Ill. App. 3d at 473. In that regard, the majority emphasized that defense counsel (1) admitted they were unaware of the "preponderance of the evidence" burden of proof in a probation revocation proceeding, (2) conceded they would have called additional alibi witnesses and called the respondent to testify on his own behalf if they had been aware of the burden of proof, and (3) failed to call additional witnesses to corroborate the testimony of the respondent's father. *A.V.*, 285 Ill. App. 3d at 473. In addition, the majority determined that there was a reasonable probability that, but for defense counsel's performance, the result would have been different. *A.V.*, 285 Ill. App. 3d at 475. The majority explained that if defense counsel had objected to consolidation, the State would have had to elect to proceed on either the delinquency petition or the petition for revocation of probation. *A.V.*, 285 Ill. App. 3d at 475. If the State had elected to proceed on the former and the respondent was acquitted, as he was in the consolidated proceeding, then, pursuant to *Grayson*, the State would

-13-

have been prevented from relitigating the same issues in a later probation revocation proceeding. *A.V.*, 285 Ill. App. 3d at 475. The majority rejected the State's argument that it could simply have elected to proceed first on the petition to revoke the respondent's probation, in which case it would not have been precluded from proceeding against the respondent on the delinquency petition. *A.V.*, 285 Ill. App. 3d at 475. According to the majority, the State's argument assumed in hindsight that it would have elected to proceed first with the probation revocation hearing, and the majority was unwilling to accept this assumption, given that "[o]ne could just as easily argue to the contrary and reach an opposite conclusion." *A.V.*, 285 Ill. App. 3d at 475. For these reasons, the majority concluded that the respondent received ineffective assistance of counsel and remanded the cause for a new hearing. *A.V.*, 285 Ill. App. 3d at 475.

The dissent disagreed with the majority's reliance on *Porter*, opining that the *Porter* court did not intend "to set the stage for purposeful stratagems that would degrade the salutary principles established in *Strickland*." *A.V.*, 285 Ill. App. 3d at 476 (Wolfson, J., dissenting). Reviewing the transcript of defense counsel's closing arguments, the dissent concluded that counsel's comments did not reflect a lack of understanding about the standards of proof that applied to the consolidated charges. *A.V.*, 285 Ill. App. 3d at 477 (Wolfson, J., dissenting). Rather, it appeared that defense counsel's strategy was to succeed on all the charges in a single proceeding. *A.V.*, 285 Ill. App. 3d at 477 (Wolfson, J., dissenting). The dissent reasoned that, by following *Porter* in the instant case, the majority was "saying that defense counsel has an affirmative duty to object to consolidation in all instances or face a successful claim of ineffectiveness," in which case "[a] purposeful failure to object would plant reversible error in any consolidated hearing." *A.V.*, 285 Ill. App. 3d at 477 (Wolfson, J., dissenting). The dissent cautioned that "a defense lawyer would not be motivated to object to consolidation if assured his or her silence meant that no conviction could stand." *A.V.*, 285 Ill. App. 3d at 477 (Wolfson, J., dissenting).

This brings us to the present case, wherein the majority relied on *Porter* and *A.V.* in holding that defense counsel's request to consolidate defendant's bench trial with his probation revocation hearing fell below an objective standard of reasonableness and

prejudiced defendant. No. 1–04–2778 (unpublished order under Supreme Court Rule 23). Obviously, if *Grayson* is overruled, then the basis for defendant's ineffective assistance of counsel claim no longer exists, because without *Grayson*, defendant has no support for the position that the State would have been precluded from proceeding against him on the probation revocation petition if the revocation hearing had not been consolidated with the bench trial on the substantive charge. Whether *Grayson* should be overruled is a question that implicates the doctrine of *stare decisis*.

The doctrine of *stare decisis* " 'expresses the policy of the courts to stand by precedents and not to disturb settled points.' " *People v. Caballes*, 221 Ill. 2d 282, 313 (2006), quoting *Neff v. George*, 364 Ill. 306, 308-09 (1936), overruled on other grounds by *Tuthill v. Rendelman*, 387 Ill. 321 (1944). In other words, " 'a question once deliberately examined and decided should be considered as settled and closed to further argument' " (*Wakulich v. Mraz*, 203 Ill. 2d 223, 230 (2003), quoting *Prall v. Burckhartt*, 299 Ill. 19, 41 (1921)), so that the law will not change erratically, but will develop in a principled, intelligible fashion (*People v. Mitchell*, 189 Ill. 2d 312, 338 (2000)).

*Stare decisis*, however, is not an "inexorable command." *People v. Jones*, 207 Ill. 2d 122, 134 (2003), quoting *Payne v. Tennessee*, 501 U.S. 808, 828, 115 L. Ed. 2d 720, 737, 111 S. Ct. 2597, 2609-10 (1991). If it is clear a court has made a mistake, it will not decline to correct it, even if the mistake has been reasserted and acquiesced in for many years. *People v. Boreman*, 401 Ill. 566, 571 (1948). That said, this court will not depart from precedent merely because it might have decided otherwise if the question were a new one. *People v. Lopez*, 207 Ill. 2d 449, 459 (2003). As we recently reiterated, any departure from *stare decisis* must be " 'specially justified.' " *People v. Suarez*, No. 100499, slip op. at 10 (January 19, 2007), quoting *People v. Sharpe*, 216 Ill. 2d 481, 520 (2005). Thus, prior decisions should not be overruled absent "good cause" or "compelling reasons." *Suarez*, slip op. at 10, quoting *Sharpe*, 216 Ill. 2d at 520. In general, a settled rule of law that does not contravene a statute or constitutional principle should be followed unless doing so is likely to result in serious detriment prejudicial to public interests. *Suarez*, slip op. at 10, quoting *Sharpe*, 216 Ill. 2d at 520. Good cause to

depart from *stare decisis* also exists when governing decisions are unworkable or badly reasoned. *Sharpe*, 216 Ill. 2d at 520.

At the outset, we observe that we do not consider the continuing viability of *Grayson* on a blank slate. This court explicitly called *Grayson* into question in *In re Nau*, 153 Ill. 2d 406 (1992).

In *Nau*, this court affirmed an order involuntarily committing the respondent to a mental-health facility and an order continuing the respondent's involuntary commitment. *Nau*, 153 Ill. 2d at 431. On cross-appeal, the respondent, who was acquitted of the murder of his stepbrother at a discharge hearing prior to the commitment hearings, argued that the trial court erred in allowing evidence and argument regarding the respondent's stepbrother's death at the commitment hearings. *Nau*, 153 Ill. 2d at 423. Specifically, the respondent argued that his acquittal on the murder charge collaterally estopped the State from presenting evidence or arguing at the commitment hearings that the respondent killed his stepbrother. *Nau*, 153 Ill. 2d at 424.

In rejecting the respondent's argument, this court relied on *Dowling v. United States*, 493 U.S. 342, 107 L. Ed. 2d 708, 110 S. Ct. 668 (1990), and *People v. Jackson*, 149 Ill. 2d 540 (1992). In *Dowling*, during the defendant's trial on robbery charges, the government introduced the testimony of a witness who identified the defendant as the perpetrator of an unrelated robbery. *Dowling*, 493 U.S. at 344-45, 107 L. Ed. 2d at 715, 110 S. Ct. at 670. The defendant had previously been acquitted of that robbery charge. *Dowling*, 493 U.S. at 345, 107 L. Ed. 2d at 715, 110 S. Ct. at 670. He argued that his acquittal collaterally estopped the prosecution from introducing the disputed testimony. *Dowling*, 493 U.S. at 348, 107 L. Ed. 2d at 717, 110 S. Ct. at 672. The Supreme Court held that collateral estoppel was inapplicable, reasoning that because the admissibility of the witness' testimony was governed by a lower standard of proof than beyond a reasonable doubt, the government was not precluded from relitigating the issue of the defendant's involvement in the other robbery. *Dowling*, 493 U.S. at 348-49, 107 L. Ed. 2d at 717-18, 110 S. Ct. at 672.

This court applied the reasoning of *Dowling* in *Jackson*. There, the defendant argued that he was entitled to a new sentencing hearing because he was denied due process at his original sentencing hearing when the trial court considered charges of which the defendant was

later acquitted. *Jackson*, 149 Ill. 2d at 547. This court held that the subsequent acquittal did not preclude the State from introducing evidence at the defendant's sentencing hearing that the defendant committed the offense of which he was acquitted, as the sentencing hearing involved a lower burden of proof. *Jackson*, 149 Ill. 2d at 547-51. In so holding, the court discussed *Dowling* with approval, noting that the Supreme Court had decided that evidence that resulted in a prior acquittal could be used for limited purposes in the guilt phase of trial for another offense, since the government is not precluded from " 'relitigating an issue when it is presented in a subsequent action governed by a lower standard of proof.' " *Jackson*, 149 Ill. 2d at 550, quoting *Dowling*, 493 U.S. at 349, 107 L. Ed. 2d at 718, 110 S. Ct. at 672. Ultimately, the court found it immaterial that the defendant's acquittal came after his sentencing hearing, because even though the trial court could not have known at the time of sentencing that the respondent would be acquitted, the court did know that he had not yet been convicted. *Jackson*, 149 Ill. 2d at 550-51.

In *Nau*, this court concluded that *Jackson* and *Dowling* were dispositive of the issue raised by the respondent. *Nau*, 153 Ill. 2d at 426. The court noted that the burden of proof at the discharge hearing where the respondent was acquitted of his stepbrother's murder was beyond a reasonable doubt. *Nau*, 153 Ill. 2d at 426. Thus, his acquittal established only that the State was unable to prove his commission of the crime beyond a reasonable doubt. *Nau*, 153 Ill. 2d at 426. At the respondent's civil commitment hearings, the State merely sought to use the testimony regarding the respondent's participation in his stepbrother's murder as evidence of the respondent's eligibility for involuntary admission. *Nau*, 153 Ill. 2d at 426. The State's only burden at the commitment hearings was to establish by clear and convincing evidence that the respondent was a person subject to involuntary admission. *Nau*, 153 Ill. 2d at 426. Because the trial court did not have to find beyond a reasonable doubt–or, for that matter, by any standard of proof–that the respondent murdered his stepbrother in order to find him subject to involuntary admission, this court concluded that it was proper for the trial court to consider evidence regarding the respondent's possible commission of his stepbrother's murder as evidence of his eligibility for commitment. *Nau*, 153 Ill. 2d at 426-27.

-17-

After upholding the trial court's consideration of the murder-related evidence, this court went on to reject the respondent's reliance on *Grayson* as support for his claim that the evidence was improperly considered. *Nau*, 153 Ill. 2d at 427. The court summarized *Grayson* (*Nau*, 153 Ill. 2d at 427), and then commented as follows:

> "In the instant case, we are concerned only with whether an acquittal on a criminal charge precludes the use of evidence of that crime at a subsequent civil commitment hearing. We have determined that, under *Jackson* and *Dowling*, this subsequent use of the evidence was proper. While we question the viability of *Grayson* in light of *Jackson*, we are not now presented with the specific question addressed in *Grayson*: whether a crime of which a defendant has been acquitted may nonetheless constitute the basis for a probation revocation. Thus, we will not herein decide whether *Grayson* remains valid today. However, we do determine that *Jackson*, and not *Grayson*, controls the instant case." *Nau*, 153 Ill. 2d at 427-28.

Accordingly, the court held that the respondent's acquittal of his stepbrother's murder did not collaterally estop the State from introducing evidence of the murder at the respondent's civil commitment hearings. *Nau*, 153 Ill. 2d at 428.

Unlike *Nau*, this case does present us with the specific question addressed in *Grayson*, albeit in the context of an ineffective assistance of counsel claim. Here, defendant was acquitted of the offense of unlawful use of a weapon by a felon but found to have violated his probation on the basis of committing that offense. Thus, the reservations this court expressed in *Nau* over addressing the viability of *Grayson* are not present here.

*Nau* provides a useful point of departure for our discussion of whether to overrule *Grayson* because it brings to light the problematic nature of *Grayson*'s doctrinal underpinnings. In relying on *Dowling* and *Jackson*, *Nau* holds to the principle that an acquittal in a criminal trial does not preclude the government from relitigating an issue in a subsequent action governed by a lower standard of proof. See *Nau*, 153 Ill. 2d at 426-27. This principle emerged from the Supreme Court's decision in *Dowling* as a limitation on its holding in *Ashe v. Swenson* that the double jeopardy clause of the fifth amendment

-18-

incorporates the doctrine of collateral estoppel. See *Dowling*, 493 U.S. at 347-49, 107 L. Ed. 2d at 717-18, 110 S. Ct. at 671-72. As the Court explained in *Dowling*:

> "[U]nlike the situation in *Ashe v. Swenson*, the [defendant's] prior acquittal did not determine an ultimate issue in the present case. This much [defendant] concedes, and we decline to extend *Ashe v. Swenson* and the collateral-estoppel component of the Double Jeopardy Clause to exclude in all circumstances, as [defendant] would have it, relevant and probative evidence that is otherwise admissible under the Rules of Evidence simply because it relates to alleged criminal conduct for which a defendant has been acquitted." *Dowling*, 493 U.S. at 348, 107 L. Ed. 2d at 717, 110 S. Ct. at 672.

As further support for not extending *Ashe*, the Court in *Dowling* discussed two cases decided after *Ashe* that involved civil forfeiture proceedings initiated after criminal acquittals. *Dowling*, 493 U.S. at 349, 107 L. Ed. 2d at 718, 110 S. Ct. at 672-73. In *United States v. One Assortment of 89 Firearms*, 465 U.S. 354, 361-62, 79 L. Ed. 2d 361, 368, 104 S. Ct. 1099, 1104 (1984), the Court held that a gun owner's acquittal on a charge of dealing firearms without a license did not preclude a subsequent *in rem* forfeiture proceeding against those firearms, because even though forfeiture was only appropriate if the jury in the forfeiture proceeding concluded that the defendant had committed the underlying offense, the government only had to prove its forfeiture case by a preponderance of the evidence. Likewise, in *One Lot Emerald Cut Stones v. United States*, 409 U.S. 232, 234-35, 34 L. Ed. 2d 438, 441-42, 93 S. Ct. 489, 491-92 (1972), the Court held that the double jeopardy clause did not bar a forfeiture action subsequent to acquittal on the underlying offense because the difference between the burden of proof in a criminal case and the burden of proof in the forfeiture proceeding precluded application of the doctrine of collateral estoppel.

After *Dowling* was decided, the Court applied *Dowling*'s rationale in *United States v. Watts*, 519 U.S. 148, 136 L. Ed. 2d 554, 117 S. Ct. 633 (1997). In *Watts*, two sentencing courts considered conduct of which the defendants had been acquitted in enhancing the defendants' sentences. *Watts*, 519 U.S. at 149-51, 136 L. Ed. 2d at 560-61, 117 S.

Ct. at 634-35. After concluding that the Federal Sentencing Guidelines permitted consideration of this conduct (*Watts*, 519 U.S. at 151-54, 136 L. Ed. 2d at 561-63, 117 S. Ct. at 635-36), the Court determined that the acquittals had no preclusive effect, because, under the Guidelines, facts relevant to sentencing only had to be proved by a preponderance of the evidence (*Watts*, 519 U.S. at 155-57, 136 L. Ed. 2d at 563-65, 117 S. Ct. at 637-38).

We discern from the cases discussed above that the principle of collateral estoppel embodied in the double jeopardy clause of the United States Constitution does not preclude the relitigation of an issue after an acquittal in a criminal trial when the subsequent disposition of the issue is governed by a lower standard of proof. This is because an acquittal on a criminal charge does not prove that the defendant is innocent, but merely that a reasonable doubt exists as to his guilt. *Watts*, 519 U.S. at 155, 136 L. Ed. 2d at 564, 117 S. Ct. at 637, quoting *89 Firearms*, 465 U.S. at 361, 79 L. Ed. 2d at 368, 104 S. Ct. at 1104. This court's decision in *Grayson*, however, extended *Ashe v. Swenson*'s application of the doctrine of collateral estoppel in the manner subsequently rejected by these cases. As discussed, *Grayson* relied heavily on *Ashe v. Swenson* in holding that the State was precluded from proceeding with the defendant's probation revocation hearing after the defendant was acquitted of the substantive charge, despite the fact that the probation revocation hearing involved a lower standard of proof. See *Grayson*, 58 Ill. 2d at 263-65.

This court did not expressly state in *Grayson* whether it was conducting its analysis solely under the United States Constitution (U.S. Const., amend. V). Assuming it was, then *Grayson* clearly goes beyond what is required by the double jeopardy clause of the fifth amendment in precluding the relitigation of an issue under a lower standard of proof after an acquittal in a criminal trial. Furthermore, we find no independent support for *Grayson*'s expansive interpretation of the principle of collateral estoppel in the double jeopardy clause of the Illinois Constitution of 1970 (Ill. Const. 1970, art. I, §10). This court has previously interpreted the Illinois Constitution's double jeopardy clause in a manner that is consistent with the United States Supreme Court's interpretation of the double jeopardy clause of the fifth amendment. See *In re P.S.*, 175 Ill. 2d 79,

89-90 (1997), citing *People v. Levin*, 157 Ill. 2d 138, 160 (1993); *People v. 1988 Mercury Cougar*, 154 Ill. 2d 27, 39 (1992). We have no reason to do otherwise here. As we recently described in *People v. Caballes*, our approach to determining the relationship between cognate provisions of the Illinois Constitution and the United States Constitution is an "interstitial," or "limited," form of the lockstep doctrine. *Caballes*, 221 Ill. 2d at 309. Consistent with that approach (*Caballes*, 221 Ill. 2d at 310-11), we find nothing in the language of our state constitution (Ill. Const. 1970, art. I, §10 ("No person shall *** be twice put in jeopardy for the same offense")), the debates or committee reports of the constitutional convention (3 Record of Proceedings, Sixth Illinois Constitutional Convention 1376-80, 1390; 6 Record of Proceedings, Sixth Illinois Constitutional Convention 43-44), or the tradition of our state that warrants interpreting the Illinois Constitution's double jeopardy clause to preclude a probation revocation hearing after an acquittal of the substantive charge in the manner suggested by *Grayson*. In light of these considerations, overruling *Grayson* would have the salutary effect of harmonizing this court's case law regarding the collateral estoppel component of the guarantee against double jeopardy with that of the United States Supreme Court. It would also eliminate the tension between *Grayson* and this court's more recent decisions in *Jackson* and *Nau*.

*Grayson*'s doctrinal weakness is not the only factor that militates in favor of its abrogation. The rule established by *Grayson* is unworkable, because it creates a perverse system of incentives for the State and for defense counsel in cases where a defendant faces both a substantive charge and probation revocation based on the same conduct. In such cases, the defendant can receive a trial on the substantive charge before his probation revocation hearing, receive a trial on the substantive charge after his probation revocation hearing, or receive a trial on the substantive charge at the same time as his probation revocation hearing. The third option is beneficial to the State and the defendant, because it avoids duplicative litigation, and thereby results in a more prompt, less costly disposition of all the proceedings against the defendant. However, *Grayson* provides defense counsel with an incentive to argue their own ineffectiveness in consolidated proceedings that result in an acquittal and a probation

-21-

revocation, and provides the State with a concomitant incentive to avoid consolidation.

To illustrate this point, under *Grayson*, the only scenario in which objecting to consolidation actually proves helpful to a defendant is where the State tries the substantive charge first and the defendant is acquitted. However, defense counsel can achieve the same result by not objecting to consolidation, and can do so at an advantage to the defendant. If counsel does not object, counsel secures the benefits of prompt adjudication that consolidation provides. Counsel also avoids the possibility that the State will simply proceed first with the probation revocation hearing and obtain a finding that the defendant violated his probation. Then, in the end, if the defendant is acquitted of the substantive charge but found to have violated his probation, defense counsel can argue he was ineffective for not objecting to consolidation. A finding of ineffective assistance of counsel will result in an automatic reversal of the finding that the defendant violated his probation, because, pursuant to *Grayson*, the acquittal precludes the State from proceeding with a new probation revocation hearing.

Alternatively, defense counsel can simply request consolidation on the defendant's behalf. There again, the same concerns arise. The defendant enjoys the benefits of a consolidated proceeding while preserving the opportunity to obtain an automatic reversal of the finding that he violated the terms of his probation.

Defendant's point is well taken that lawyers have a reputational interest in avoiding determinations that they provided ineffective assistance of counsel. *Grayson*, however, has created a situation where a defense lawyer is encouraged to provide ineffective assistance of counsel in the interest of zealous advocacy. Therefore, the fact that lawyers generally seek to avoid allegations of ineffectiveness does little to assuage our concerns.

For the reasons expressed above, we believe good cause exists to overrule *Grayson*. The appellate court's decisions in *People v. Porter* and *In re A.V.*, which relied on *Grayson* in finding that the defendants therein received ineffective assistance of counsel, are hereby overruled as well. In light of our conclusion that collateral estoppel does not preclude the State from proceeding with a probation revocation hearing after a defendant has been acquitted of the

substantive charge, defendant's ineffective assistance of counsel claim must fail.

## II. Sufficiency of Evidence of Probation Violation

Having rejected defendant's ineffective assistance of counsel claim, we briefly address whether the evidence presented to the trial court was sufficient to prove that defendant violated his probation.

Defendant argues that the evidence submitted at trial was insufficient to demonstrate that the item he dropped was "firearm ammunition" as defined by section 1.1 of the Firearm Owners Identification Card Act (FOID Act) (430 ILCS 65/1.1 (West 2002)). Specifically, defendant contends that Sergeant Glynn's testimony about finding an ammunition clip containing nine-millimeter rounds was insufficient to prove that the clip actually contained live nine-millimeter rounds. Defendant posits that the cartridges might have been blanks, and that none of the evidence presented by the State rules out this possibility.

The State maintains that the evidence was sufficient to show by a preponderance that defendant was in possession of firearm ammunition as a felon. According to the State, it is clear that the credible testimony of one witness is sufficient to sustain a defendant's conviction, even if that testimony is contradicted by the defendant. Here, Sergeant Glynn's testimony that he observed defendant in possession of a black, semiautomatic pistol, and that he recovered an ammunition clip containing nine-millimeter rounds, was sufficient to establish that defendant was in possession of firearm ammunition. The State emphasizes that Sergeant Glynn was an 18-year veteran of the Chicago police department at the time of the offense, and that his testimony was neither impeached nor discredited.

Section 24–1.1 of the Criminal Code of 1961 provides, in pertinent part:

> "It is unlawful for a person to knowingly possess on or about his person *** any weapon prohibited under Section 24–1 of this Act or any firearm *or any firearm ammunition* if the person has been convicted of a felony under the laws of

this State or any other jurisdiction." (Emphasis added.) 720 ILCS 5/24–1.1(a) (West 2002).

Section 2–7.1 of the Code defines "firearm ammunition" as having the meaning ascribed to it in section 1.1 of the FOID Act (720 ILCS 5/2–7.1 (West 2002)). Section 1.1, in turn, provides that "[f]irearm ammunition" means:

"[A]ny self-contained cartridge or shotgun shell, by whatever name known, which is designed to be used or adaptable to use in a firearm; excluding, however:

(1) any ammunition exclusively designed for use with a device used exclusively for signalling or safety and required or recommended by the United States Coast Guard or the Interstate Commerce Commission; and

(2) any ammunition designed exclusively for use with a stud or rivet driver or other similar industrial ammunition." 430 ILCS 65/1.1 (West 2002).

The State must prove a violation of probation by a preponderance of the evidence. 730 ILCS 5/5–6–4(c) (West 2002). One condition of probation is that a person on probation "not violate any criminal statute of any jurisdiction." 730 ILCS 5/5–6–3(a)(1) (West 2002). In the State's petition to revoke defendant's probation, the State alleged that defendant violated his probation by committing the offense of unlawful use of a weapon by a felon. Defendant's information specified that he committed the offense by "knowingly possess[ing] on or about his person any firearm ammunition, to wit: bullets, after having been previously convicted of the felony offense of aggravated unlawful use of a weapon." Accordingly, to demonstrate that defendant violated a condition of his probation, the State had to show by a preponderance of the evidence that, while on probation, defendant knowingly possessed firearm ammunition as a felon.

Defendant does not dispute that, on April 19, 2004, the date of his alleged probation violation, he was on probation and was a felon. Defendant also does not dispute that he was in knowing possession of the item that Sergeant Glynn saw him drop in the alley and subsequently recovered. Defendant argues only that the evidence presented at trial was insufficient to demonstrate by a preponderance

that the item in question was, in fact, "firearm ammunition" as defined by section 1.1 of the FOID Act.

We note that defendant's challenge to the sufficiency of the evidence assumes that, as a matter of law, blank ammunition does not qualify as "firearm ammunition" for purposes of section 1.1 of the FOID Act. We need not address the validity of this assumption, as defendant has made no attempt to justify it through argument or citation to relevant authority. See 210 Ill. 2d R. 341(h)(7) (argument portion of brief "shall contain the contentions of the appellant and the reasons therefor, with citation of the authorities and the pages of the record relied on *** [and] [p]oints not argued are waived"); *Miller v. Rosenberg*, 196 Ill. 2d 50, 56 n.2 (2001) (declining to address party's challenge to ruling barring his attorney fees as element of damages in his malicious prosecution claim where brief contained insufficient discussion of issue). Moreover, even assuming, *arguendo*, that blanks do not qualify as "firearm ammunition" within the meaning of the relevant statutory definition, the evidence presented to the trial court provided it with a sufficient basis for inferring that the clip in defendant's possession contained live nine-millimeter rounds, not blanks.

When the trial court finds that a violation of probation has been proved, a challenge to the sufficiency of the evidence of the type asserted by defendant will succeed only if the trial court's finding is against the manifest weight of the evidence. *People v. Houston*, 118 Ill. 2d 194, 199 (1987); *People v. Cooper*, 66 Ill. 2d 509, 514 (1977); *People v. Crowell*, 53 Ill. 2d 447, 451-52 (1973). In the instant case, Sergeant Glynn's testimony established that he was an 18-year veteran of the Chicago police department, that he clearly observed defendant in possession of a black, semiautomatic pistol, and that he recovered a magazine from that pistol containing nine-millimeter rounds. As the State points out, Sergeant Glynn's testimony was not contradicted or impeached in any way, and there is no indication in the record before us that the cartridges he identified were blanks. Therefore, the trial court could reasonably have inferred that the ammunition in defendant's possession was live ammunition, and the court's finding that defendant violated his probation by committing the offense of unlawful use of a weapon by a felon was not against the manifest weight of the evidence. Accord *People v. Lee*, 48 Ill. 2d

272, 281 (1971) (rejecting defendants' argument that, by failing to prove that shotgun shells introduced into evidence were live shells, the State failed to meet its burden of proving defendants guilty beyond a reasonable doubt of unlawful possession of firearm ammunition, because whether shells were capable of being discharged was for trier of fact to decide, and nothing in record suggested shells were not, in fact, live).

## CONCLUSION

For the reasons expressed above, we hold that defendant was not denied the effective assistance of counsel, and that the evidence was sufficient to demonstrate that defendant violated his probation. Accordingly, we reverse the judgment of the appellate court and affirm the judgment of the circuit court.

*Appellate court judgment reversed;*
*circuit court judgment affirmed.*