**Donnell JOHNSON, Appellant,**

v.

**UNITED STATES, Appellee.**

**Nos. 96–CO–1846, 97–CO–1932.**

District of Columbia Court of Appeals.

Argued Oct. 11, 2000.
Decided Nov. 30, 2000.

---

Janell M. Wolfe, Arlington, VA, appointed by this court, for appellant.

Roy W. McLeese III, Assistant United States Attorney, with whom Wilma A. Lewis, United States Attorney, and John R. Fisher and Patricia Sulzbach, Assistant United States Attorneys, were on the brief, for appellee.

Before STEADMAN, REID, and WASHINGTON, Associate Judges.

REID, Associate Judge:

Appellant Donnell Johnson ("Johnson") appeals from the October 30, 1997 order of the Superior Court sentencing him to a term of six to twenty years imprisonment on his 1992 second degree murder conviction, based upon a finding that he subsequently violated his probation by unlawfully possessing a firearm.[1] He contends

---

1. On August 12, 1998, this court, *sua sponte,* consolidated Johnson's appeal from his resen-

that the trial court erred by: (1) ordering revocation of his probation after his acquittal of the underlying offense; (2) deciding that the preponderance of the evidence standard, rather than the clear and convincing evidence standard applies to probation revocation hearings; and (3) revoking his probation when the government met neither the preponderance of evidence, nor the clear and convincing evidence standard. We hold that probation may be revoked even if the accused is acquitted of an underlying offense; and that the standard for the revocation of probation is "preponderance of the evidence." In addition, we conclude that the trial court properly revoked Johnson's probation; the evidence was sufficient both under the preponderance of the evidence and the clear and convincing evidence standards.

## FACTUAL SUMMARY

On January 17, 1992, Johnson plead guilty to the offense of second-degree murder (unarmed), in violation of D.C.Code § 22–2403.[2] The trial court eventually imposed a sentence of six to eighteen years imprisonment, suspending all but three years, followed by five years of probation.

During his probation, Johnson was arrested on more than one occasion, but acquitted each time. On January 10, 1995, he was arrested in the District on a charge of possession with intent to distribute cocaine, and on March 28, 1996, he was arrested in Maryland on a charge of burglary. After his acquittal on both charges, and while the issue of whether his probation could be revoked after an acquittal was pending on appeal,[3] he was arrested in the District again and charged with unlawful possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g) (1996).[4]

Following Johnson's acquittal of the unlawful possession of a firearm charge, a probation revocation hearing took place on October 17 and 23, 1997. The evidence presented at the probation revocation hearing included the transcript of Johnson's July 1997 federal court jury trial on the firearm charge, the firearm which prompted the charge against him, and other exhibits from the jury trial. The transcript of Johnson's July 1997 jury trial

tencing (No. 97–CO–1932), with his December 9, 1996 appeal from the November 7, 1996 order to show cause why his probation should not be revoked based upon his arrest for burglary (No. 96–CO–1846) on March 28, 1996. As with the firearm charge in 97–CO–1932, Johnson was eventually acquitted of this burglary charge. In reviewing Johnson's instant appeal before this court, he appears to have abandoned his double jeopardy argument pertaining to 96–CO–1846, and rather focuses exclusively upon the "new charges" relevant to the 97–CO–1932 appeal. Therefore, since Johnson has failed to comply with D.C.App.R. 28(a)(5) with regard to his appeal in 96–CO–1846, we need not separately address the similar issue relating to the 96–CO–1846 appeal.

2. According to the trial court which handled Johnson's probation revocation hearing and sentencing, Johnson "was in essence playing with a firearm that discharged and went through a window and killed [a woman] in the presence of some of her daughters."

3. The trial judge "h[e]ld as a matter of law that by virtue of the differences between criminal trials and probation revocation proceedings, with respect to the interests at stake and the standards of proof, neither the bar against double jeopardy nor the due process clause is violated by revocation of probation upon an acquittal of the rearrest offense." In light of this holding, the trial court scheduled a probation revocation hearing for October 27, 1995. The record shows that this hearing never occurred; the trial judge in this matter noted that the hearing "was ... placed on hold while [Johnson's] appeal was perfected by the defense."

4. Section 922(g) of 18 U.S.C. provides, in pertinent part, that: "It shall be unlawful for any person—(1) who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year ... to ship or transport in interstate or foreign commerce or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce."

showed, through the testimony of police officers, that on January 21, 1997, at approximately 5:45 p.m., members of the Metropolitan Police Department ("MPD") who were patrolling an area around the 1300 block of Savannah Street, SE, saw a yellow Lincoln town car, with a red Christmas bow on it, and followed it.[5] Shortly after the police officers saw the vehicle, the driver, Edgar Watson, and the passenger, Johnson, exited the car and began walking away from it. Police officers stopped and detained them. One of the officers opened the passenger side of the car and saw "a butt of a gun." The officers recovered from the car: 1) a loaded .9mm handgun on the floorboard of the passenger side of the vehicle where Johnson had been seated; 2) .9mm ammunition underneath the passenger's seat; and 3) a .380 handgun with accompanying ammunition on the driver's side of the vehicle. Neither Johnson nor Watson possessed a license to carry either of the weapons, and were therefore promptly arrested. At the conclusion of the evidence, the jury returned a not guilty verdict.

After considering the July 1997 jury trial transcript and examining exhibits, including the gun found underneath the seat of the car where Johnson had been seated, the trial court applied the preponderance of the evidence standard in determining whether Johnson's probation should be revoked despite his acquittal on the underlying offense,[6] and concluded that:

> [V]iewing all of the evidence in it[s] totality [ ] a number of points raised by the government are valid and ... in this situation, the defendant was in the car....
>
> The weapon was both bulging in it[s] position, partially hidden by the floorboard but a sizeable portion of the gun is in plain view. So it's not only bulging and would be accessible to one's foot, [and] hard to miss....
>
> And there was credible testimony that the Officer saw the gun when [ ] the door was open. The gun was readily accessible to the defendant.... [T]here is circumstantial evidence [ ] that there were two gentlemen in the car, both Mr. Watson and Mr. Johnson and a second gun was found in the car, where inferentially it would have been in possession of the driver, Mr. Johnson being the passenger.
>
> **Accordingly the Court finds by both a pr[e]ponder[ence] of the evidence and indeed, [ ] by clear and convincing evidence that there is—I'm making clear I rule that upon the pr[e]ponder[ence] of the evidence [ ] but in the alternative, also by clear and convincing evidence [,] that there is sufficient credible evidence to indicate that the defendant was in possession of the weapon at hand, his handgun.** That he had the power and intent to exercise dominion and control over that weapon[,] and that this clearly constitutes a violation of his conditions of probation.... Therefore, the Court concludes that probation shall be revoked.

(Emphasis supplied). Based upon this decision, Johnson was resentenced to a term

---

5. The precise reason why the officers followed and eventually stopped the Lincoln town car is not clear from the July 22 and 23, 1997 transcript of the Johnson's federal trial on the firearm charge. The record does not indicate whether Johnson filed a successful suppression motion which precluded the government from introducing certain evidence. However, testimony from the government witnesses focused on only one weapon retrieved from the Lincoln. Furthermore, the government's brief, filed in the case before us, contains a footnote stating: "At the probation-revocation hearing, the government offered evidence that the police officers suspected that the two men in the Lincoln had just engaged in a drug transaction. The trial judge stated that this evidence was weak and that he did not rely on it as evidence of motive."

6. The trial judge also stated that under the clear and convincing evidentiary standard, "there is sufficient credible evidence to indicate that the defendant was in possession of the weapon at hand, his handgun."

of six to twenty years in prison. He filed a timely appeal.

## ANALYSIS

■ Johnson first contends that the trial court erred by ordering revocation of his probation after his acquittal of the underlying offense. He asserts that "[p]ermitting a revocation in these circumstances ... would undermine the values underlying the Double Jeopardy Clause ... [because] [a] criminal defendant may never be retried after an acquittal." He also maintains that the doctrine of collateral estoppel precludes revocation of his probation. The government contends that "the Double Jeopardy Clause [and the doctrine of collateral estoppel] do[ ] not apply to probation-revocation proceedings, [and therefore] the prior prosecution of [Johnson] for firearm possession posed no obstacle to the subsequent revocation based on the same incident."

■ The Double Jeopardy Clause of the Fifth Amendment to the Constitution of the United States "safeguards a defendant from multiple trials or successive prosecutions or multiple punishments for the same offense." *United States v. Allen,* 755 A.2d 402, 406 (D.C.2000) (referencing *Lindsay v. United States,* 520 A.2d 1059, 1061 (D.C.1987)). However,

> Because probation revocation proceedings are not criminal prosecutions, ... and any consequent revocation does not punish the defendant for any crime charged subsequent to the imposition of probation, ... a probation revocation hearing cannot be the basis for a claim of either multiple prosecution or multiple punishment.

*Krochta v. Commonwealth,* 429 Mass. 711, 711 N.E.2d 142, 144–45 (1999) (citations omitted); *see also Jones v. United States,* 669 A.2d 724, 727 (D.C.1995) ("[T]his court

has noted that jeopardy does not attach in parole, probation, or bond revocation hearings, because these proceedings are not designed to punish a defendant for violation of a criminal law.") (internal quotations omitted); *Hardy v. United States,* 578 A.2d 178, 181 (D.C.1990) ("[J]eopardy does not attach in probation or parole revocation proceedings because they are not new criminal prosecutions, but rather, continuations of the original prosecutions which resulted in probation or parole."). Similarly,

> While the doctrine of collateral estoppel is applicable to criminal cases as a matter of common law, *Bowling v. State,* [298 Md. 396,] 470 A.2d 797 (Md.1984), and the principle is embodied in the fifth amendment prohibition against double jeopardy, *Ashe v. Swenson,* 397 U.S. 436[, 90 S.Ct. 1189, 25 L.Ed.2d 469] (1970),[7] it has never been held to apply to revocation of probation proceedings. *See Scott v. State,* [238 Md. 265,] 208 A.2d 575 (Md.1965); 76 A.L.R.3d 564, PROBATION REVOCATION—FOLLOWING ACQUITTAL .... The reason for this is due to the fundamental difference between the nature and levels of proof in a criminal proceeding and a revocation of probation hearing.

*Dunn v. State,* 65 Md.App. 637, 501 A.2d 881, 884–85 (1985). *See also Dowling v. United States,* 493 U.S. 342, 349, 110 S.Ct. 668, 107 L.Ed.2d 708 (1990) (concluding that "an acquittal in a criminal case does not preclude the Government from relitigating an issue when it is presented in a subsequent action governed by a lower standard of proof"). In light of these double jeopardy and collateral estoppel principles, we agree with the government and trial court that neither the doctrines of double jeopardy nor collateral estoppel apply to probation revocation proceedings.[8]

---

**7.** According to *Ashe, supra,* collateral estoppel "means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be

litigated between the same parties in any future lawsuit." *Id.* at 443, 90 S.Ct. 1189.

**8.** We note that the majority of jurisdictions in this country permit revocation of probation

Second, Johnson argues that the trial court erred by deciding that the preponderance of the evidence standard, rather than the clear and convincing evidence standard, applies to probation revocation hearings. Prior to conducting Johnson's probation revocation hearing, the Honorable Russell F. Canan wrote an extensive memorandum which, in part, analyzed the standard of proof governing a probation revocation proceeding, and cited cases from other jurisdictions indicating that the appropriate standard is preponderance of the evidence. In addition, Judge Canan noted that D.C.Code § 16–2327(c) (1997), which is applicable to juvenile probation revocations, uses the preponderance of the evidence standard: "Probation revocation proceedings shall be heard without a jury and shall require the establishment of the facts alleged by a preponderance of the evidence."

While not deciding the precise standard of proof issue presented in this case, we said in *Harris v. United States,* 612 A.2d 198 (D.C.1992): "We are persuaded that preponderance is the appropriate minimum standard of proof required for establishing substantive and technical violations of probation." *Id.* at 203 (footnote omitted). Other jurisdictions have applied the preponderance of the evidence standard. *See People v. Brown,* 268 A.D.2d 592, 704 N.Y.S.2d 88, 2000 N.Y.App. Div. Lexis 907 (N.Y.A.D.2000); *State v. Jones,* 55 Conn.App. 243, 739 A.2d 697, 700 (1999); *State v. Fortier,* 20 Or. App. 613, 533 P.2d 187, 188 (1975). In keeping with what appears to be the majority rule, we hold that the standard for the revocation of probation is "preponderance of the evidence."

Third, Johnson asserts that the trial court erred by revoking his probation when the government met neither the preponderance of evidence, nor the clear and convincing evidence standard. Judge Canan concluded that even though he based his probation revocation order on a preponderance of the evidence standard, the evidence presented by the government also met the clear and convincing evidence standard. In light of our holding, we need address only whether the evidence met the applicable preponderance standard. "The decision whether to revoke probation involves a two step inquiry: (1) determining whether a violation has occurred, and if so, (2) determining what action, if any, should be taken as a result." *Harris v. United States, supra,* 612 A.2d at 203 (other citations omitted). The determination of whether a violation has occurred "is essentially a factual one," *id.* at 203, and is therefore viewed deferentially under the 'clearly erroneous' standard. *Griffin v. United States,* 618 A.2d 114, 117 (1992). *See also* D.C.Code § 17–305(a). We see no reason to disturb the trial court's factual findings in this case. Judge Canan found that the gun underneath Johnson's passenger seat in the Lincoln town car was "bulging" and "in plain view." Thus, it "was readily accessible to [Johnson]." Two guns were in the car and two passengers, permitting a reasonable inference that each man had access to a gun. Therefore, we conclude that the trial court's judgment that the preponderance of the evidence was sufficient to show that Johnson violated his probation by constructively possessing a firearm, was not clearly erroneous. *See In re F.T.J.,* 578 A.2d 1161, 1163 (D.C.1990).

following acquittal of the underlying offense. We see no reason to deviate from the majority rule. *See* 76 A.L.R.3d 564, *supra,* at 2; *People v. Conway,* 263 A.D.2d 548, 695 N.Y.S.2d 137, 1999 N.Y.App. Div. Lexis 7712 (N.Y.A.D. 1999); *Jackson v. State,* 420 N.E.2d 1239, 1241 (Ind.App.1981). As one court concluded: "Contrary to the defendant's contention,

there is no inherent contradiction between a determination that the defendant violated his probation and a verdict acquitting him of the criminal offenses which formed the basis of the violation, inasmuch as the two matters are subject to different standards of proof." *Brown, supra,* 704 N.Y.S.2d at 89 (citations omitted).

Accordingly, for the foregoing reasons, we affirm the judgment of the trial court.

*So ordered.*