James G. MORGAN, Appellant,

v.

UNITED STATES, Appellee.

No. 09–CO–635.

District of Columbia Court of Appeals.

Argued Oct. 28, 2010.
Decided April 12, 2012.

acquitted. We conclude that appellant's due process rights were not violated, and affirm the trial court's revocation of appellant's probation and ordered execution of the previously imposed sentence.

## I.

In July of 2000, appellant pled guilty to one count of unarmed manslaughter.[2] On September 29, 2000, Judge Keary sentenced appellant to "[n]ot less than six years nor more than eighteen years" incarceration, with the execution of the sentence suspended as to all but five years' incarceration, five years of probation, and a $500 fine to be paid to the Victims of Violent Crimes Compensation Fund. At some point thereafter, appellant was released on probation.

On May 24, 2007, appellant was arrested and charged with possession of marijuana with intent to distribute (PWID). On October 1, 2008, appellant was acquitted of the PWID charge in a bench trial before Judge Rafael Diaz. After appellant's acquittal for PWID, Judge Keary ordered that appellant show cause why his probation should not be revoked.

At the show-cause hearing, the government presented the testimony of Metropolitan Police Department (MPD) Sergeant Robert Chagnon and MPD Lieutenant Brian Murphy. The officers testified that they were driving in an unmarked police cruiser when they noticed a Honda Accord parked at the curb, with a man, later identified as appellant, sitting in the driver's seat, and another man, later identified as William Truesdale, standing at the driver's side door. As the officers neared the Honda, they saw Truesdale "reposition his

Jenifer Wicks, Washington, DC, for appellant.

Angela M. Miller, Special Assistant United States Attorney, with whom Ronald C. Machen Jr., United States Attorney, and Roy W. McLeese III, Mary B. McCord, and Robert C. Little, Assistant United States Attorneys, were on the brief, for appellee.

Before OBERLY, Associate Judge, RUIZ, Associate Judge, Retired,* and FARRELL, Senior Judge.

RUIZ, Associate Judge, Retired:

While on probation for a manslaughter conviction, appellant was arrested, charged with and prosecuted for possession of marijuana with intent to distribute.[1] He was subsequently acquitted after a criminal trial in Superior Court; however, following a show-cause hearing, the trial court revoked his probation based on the same offense. Appellant contends that his due process rights were violated because, at the show-cause hearing, the government's case was inconsistent with the one it presented at the criminal trial in which he was

---

* Judge Ruiz was an Associate Judge of the court at the time of argument. Her status changed to Associate Judge, Retired, on September 1, 2011.

1. D.C.Code § 48–904.01 (2001).

2. D.C.Code § 22–2105 (2001).

body[,] conceal[ ] his right side and ... his right hand extend[ed] into the driver's side window." Neither officer could see any object in Truesdale's hand.

Sergeant Chagnon and Lieutenant Murphy parked their vehicle and approached the Honda "to investigate." The officers noticed a twelve-pack of beer on the front passenger floorboard, accessible to appellant, with several open bottles inside. The officers arrested appellant for possessing an open container of alcohol[3] and "sat [him] down on the curb." Lieutenant Murphy then searched the interior of the Honda. He testified that as he began the search, he smelled the odor of "unburned, fresh marijuana." He then discovered a blue Ziploc bag containing "grass substance which later field-tested positive for marijuana" in the "center console area." At the show-cause hearing, Lieutenant Murphy was asked about the location of the bag in the center console area:

PROSECUTOR: Can you describe this console area?

LT. MURPHY: My recollection is the center console runs between the two front seats of the vehicle, it has like a little dip in it, a little well, and there's like an emergency brake on top of there that you pull up. I remember further back, there's a second part of the console.

PROSECUTOR: When you say "further back," in what direction of the car?

LT. MURPHY: Towards the rear of the car, there's a second compartment of the center console that actually has a lid on it that you could lift up.

PROSECUTOR: Where did you find this single bag of marijuana?

LT. MURPHY: In the center compartment of the car, the well.

PROSECUTOR: The open area, then?

LT. MURPHY: The open area.

Upon discovering the marijuana, Lieutenant Murphy notified Sergeant Chagnon, who also then saw the Ziploc bag in the center console area and smelled the odor of fresh marijuana.

Sergeant Chagnon informed appellant that the officers had discovered marijuana inside the vehicle. As Lieutenant Murphy began to search the Honda's trunk, appellant told Sergeant Chagnon that "there [were] ten more zips in a backpack inside the trunk." Sergeant Chagnon relayed this information to Lieutenant Murphy, who replied, "Ten, my ass"; he had found 104 blue Ziploc bags containing marijuana inside the backpack.

At the show-cause hearing, appellant's counsel sought to introduce Lieutenant Murphy's testimony from the PWID trial as a prior inconsistent statement. At the PWID trial, Lieutenant Murphy had described his discovery of marijuana in the center console as follows:

PROSECUTOR: What did you find or see?

LT. MURPHY: [I] [l]ocated a blue Ziploc bag containing a dark green substance that later field tested positive for THC and that was in the center console area of the vehicle.

PROSECUTOR: Please describe in detail where that was and how you found it?

LT. MURPHY: I recall it being in the center console in between the seats, there's a center console and it was inside of that.

PROSECUTOR: Lieutenant, I see you gesturing to, making a gesture with your right hand please describe in words what you're referring to.

---

3. D.C.Code § 25–1001(a) (2001).

**LT. MURPHY:** It's on the right hand side. There's actual[ly] a console that has a lid, that you could have stuff inside the vehicle.

The court admitted a redacted copy of Lieutenant Murphy's trial testimony "as a prior inconsistent statement ... subject to the argument that it's not clearly inconsistent, it's capable of more than one interpretation."[4] The court also allowed defense counsel to introduce part of the prosecutor's closing argument in the PWID trial "which served to rebut" the government's argument at the revocation hearing that the marijuana was found in the open part of the center console of the Honda.

Appellant filed a motion to dismiss the probation show-cause order, arguing that the government should be precluded from proceeding on a theory that contradicted its theory in the PWID criminal trial. Judge Keary denied appellant's motion and found, by a preponderance of the evidence, that appellant had possessed, with the intent to distribute, the marijuana found inside the car and in the trunk. Judge Keary found this was cause to revoke appellant's probation, and sentenced him to his original term of incarceration in the manslaughter case with credit for time served. Appellant filed a timely appeal.

## II.

Appellant argues that his due process rights were violated at the show-cause hearing "because the government switched theories" by arguing "that the marijuana

was in a closed container" at the PWID trial, while saying at the show-cause hearing that it had been in plain view. The government responds that appellant's due process rights were not violated because the government had the same legal theory, albeit under slightly different factual scenarios, at both proceedings.

"[T]he decision to revoke probation is committed to the sound discretion of the trial court and typically involves a two step analysis: (1) a retrospective factual question whether the probationer has violated a condition of probation, and (2) a discretionary determination as to whether violation of a condition warrants revocation." *Brown v. United States*, 900 A.2d 184, 188 (D.C.2006). We review a trial court's revocation of a defendant's probation for abuse of discretion. *See Saunders v. United States*, 508 A.2d 92, 95 (D.C. 1986) ("Once a decision on revocation is made, we will reverse only if there has been an abuse of discretion."). Whether such revocation constitutes a violation of due process rights, however, is a question of law that we review *de novo*. *See Walton v. District of Columbia*, 670 A.2d 1346, 1352–53 (D.C.1996).

Under D.C.Code § 24–304, a trial court "may revoke the order of probation and cause the rearrest of the probationer and impose a sentence and require him to serve the sentence or pay the fine originally imposed, or both, as the case may be, or any lesser sentence." D.C.Code § 24–304(a) (2001). "This court has interpreted

---

4. During discussion on the admissibility of Lieutenant Murphy's trial testimony as a prior inconsistent statement, the prosecutor informed the trial court that Lieutenant Murphy had noticed the inconsistency that morning when reviewing his previous testimony and had informed counsel of it. The prosecutor relayed Lieutenant Murphy's explanation:

I'm reading this [the testimony] and it looks like I'm saying it's in the console. I'm just describing the console, not that the drugs were actually in that part of the console. The drugs were actually in the open part, but it does, when I'm reading this ... you know, it didn't come out very clear, but I remember those drugs, they were in the open part, not in the closed part.

§ 24–304 as a broad grant of authority, permitting 'the trial court great leeway and flexibility to tailor the decision on [revoking] probation to each probationer's needs.'" *Brown,* 900 A.2d at 188 (alteration in original) (quoting *Carradine v. United States,* 420 A.2d 1385, 1389 (D.C. 1980)). However, probation revocation must comport with due process, which "imposes procedural and substantive limits on the revocation of the conditional liberty created by probation." *Id.* Thus, the Supreme Court has stated that a probationer is entitled to: "[ (1) ] written notice of the claimed violations of his probation; [ (2) ] disclosure of the evidence against him; [ (3) ] an opportunity to be heard in person and to present witnesses and documentary evidence; [ (4) ] a neutral hearing body; and [ (5) ] a written statement by the fact-finder as to the evidence relied on and the reasons for revoking probation." *Black v. Romano,* 471 U.S. 606, 612, 105 S.Ct. 2254, 85 L.Ed.2d 636 (1985). "The probationer is also entitled to cross-examine adverse witnesses, unless the hearing body specifically finds good cause for not allowing confrontation .... [and] to the assistance of counsel in some circumstances." *Id.* Appellant does not dispute that these procedural protections were observed in his case.

In addition, we have recognized that under certain circumstances, "the due process clause is violated where the prosecution presents inconsistent theories." *Hammond v. United States,* 880 A.2d 1066, 1105 (D.C.2005) *(abrogated in part on other grounds by Davis v. Washington,* 547 U.S. 813, 821, 126 S.Ct. 2266, 165 L.Ed.2d 224 (2006)). As we have explained in the context where two defendants are tried for the same offense in different trials:

[T]he presence of a factual inconsistency, without more, will not give rise to a due-process violation. Rather, at a minimum, "[t]o violate due process, an inconsistency must exist at the core of the prosecutor's cases against the two defendants for the same crime," and the inconsistency "must have rendered unreliable" the resulting conviction.

*Boyd v. United States,* 908 A.2d 39, 51–52 (D.C.2006) (second alteration in original) (quoting *Clay v. Bowersox,* 367 F.3d 993, 1004 (8th Cir.2004)). Other courts have reached a similar conclusion where two defendants are tried in separate criminal proceedings. *See, e.g., Bradshaw v. Stumpf,* 545 U.S. 175, 187, 125 S.Ct. 2398, 162 L.Ed.2d 143 (2005) (finding no due process violation because the factual inconsistency at trial was "immaterial" to the defendant's conviction); *Smith v. Groose,* 205 F.3d 1045, 1050 (8th Cir.2000) (vacating the defendant's conviction on due process grounds because "what the State claimed to be true in [the defendant's] case it rejected in [the co-defendant's] case, and vice versa"); *Thompson v. Calderon,* 120 F.3d 1045, 1058 (9th Cir.1997) ("[I]t is well established that when no new significant evidence comes to light a prosecutor cannot, in order to convict two defendants at separate trials, offer inconsistent theories and facts regarding the same crime."), *rev'd on other grounds,* 523 U.S. 538, 118 S.Ct. 1489, 140 L.Ed.2d 728 (1998).

This appeal presents a due process claim that arises, not in the context of two separate trials against different defendants involving the same offense, but, in two different proceedings involving the same offense, against the same defendant. We have established that "neither the doctrines of double jeopardy nor collateral estoppel apply to probation revocation proceedings." *Johnson v. United States,* 763 A.2d 707, 711 (D.C.2000). This is because revocation of probation is not a criminal prosecution, and is subject to a lesser standard of proof (preponderance of the evi-

dence) than the standard of proof (beyond a reasonable doubt) required for a criminal conviction. *Id.* at 712. We have not had occasion to consider a due process challenge in the context of a single defendant whose probation is revoked following acquittal where, as alleged here, the government has changed its position between trial and the revocation hearing.

It is axiomatic that due process "expresses the requirement of 'fundamental fairness.'" *Lassiter v. Dep't of Soc. Servs.,* 452 U.S. 18, 24, 101 S.Ct. 2153, 68 L.Ed.2d 640 (1981). "Applying the Due Process Clause is therefore an uncertain enterprise which must discover what 'fundamental fairness' consists of in a particular situation by first considering any relevant precedents and then by assessing the several interests that are at stake." *Id.* at 24–25, 101 S.Ct. 2153. Similar to the revocation of probation at issue in this case, "revocation of parole is not part of a criminal prosecution and thus the full panoply of rights due a defendant in such a proceeding does not apply to parole revocations." *Morrissey v. Brewer,* 408 U.S. 471, 480, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972). Nonetheless, "probation revocation is governed by the 'minimum requirements of due process.'" *Brown,* 900 A.2d at 188 (quoting *Young v. United States,* 863 A.2d 804, 808 (D.C.2004)). In weighing the interests at stake, the Court has recognized that "[p]robationers have an obvious interest in retaining their conditional liberty." *Black,* 471 U.S. at 611, 105 S.Ct. 2254. The government "has an interest in assuring that revocation proceedings are based on accurate findings of fact and ... informed exercise of discretion," *id.,* consistent with "the government's fundamental interest in criminal prosecution: 'not that it shall win a case, but that justice shall be done.'" *Smith,* 205 F.3d at 1049 (quoting *Berger v. United States,* 295 U.S. 78, 88, 55

S.Ct. 629, 79 L.Ed. 1314 (1935)). Consequently, if fundamental fairness requires a consistent prosecutorial theory when two defendants are prosecuted for the same offense in separate criminal trials, then the minimum requirements of due process must likewise require a consistent theory where one defendant faces two proceedings concerned with the same offense.

Not every inconsistency in the government's presentation of evidence, however, rises to the level of a due process violation. "[T]he presence of factual inconsistency, without more, will not give rise to a due-process violation." *Boyd,* 908 A.2d at 51; *see Thompson,* 120 F.3d at 1058–59 ("[W]hen there are claims of inconsistent prosecutorial conduct, reversal is not required where the underlying theory 'remains consistent.'") (quoting *Haynes v. Cupp,* 827 F.2d 435, 439 (9th Cir.1987)). Rather, " '[t]o violate due process, an inconsistency must exist at the core of the prosecutor's cases ... for the same crime,' and the inconsistency 'must have rendered unreliable' the resulting conviction." *Boyd,* 908 A.2d at 51–52 (alteration in original) (quoting *Clay,* 367 F.3d at 1004); *see Smith,* 205 F.3d at 1052 ("To violate due process, an inconsistency must exist at the core of the prosecutor's cases against defendants for the same crime."); *Sifrit v. State,* 383 Md. 77, 857 A.2d 65, 79–82 (2004) (collecting cases and holding, "[b]ased on our analysis of the relevant case law, ... that a due process violation will only be found when the demonstrated inconsistency exists at the core of the State's case"). Thus, by analogy from two-defendant cases, to violate appellant's due process rights in the context of probation-revocation following trial, the inconsistency also must go to the core of the government's case against appellant and it must have rendered the findings of the show-cause hearing unreliable.

Based on our review of the record, we conclude that the factual inconsistency between Lieutenant Murphy's testimony at trial and at the probation-revocation show-cause hearing did not make the latter constitutionally infirm. In reciting her factual findings at the show-cause hearing, Judge Keary specifically addressed the discrepancy in Lieutenant Murphy's testimony. Judge Keary explained:

The impression that I'm left with is either Lieutenant Murphy doesn't clearly recall where the [Z]ip[ ]loc was and is unsure at this point. Or alternatively, as the defense would urge me to conclude, that he has intentionally improved his testimony to place the bag of drugs in plain view. As I said, I'm unable to conclude precisely where the [Z]ip[ ]loc is found because of this conflict between the two proceedings. But whether the [Z]ip[ ]loc was found inside the lidded console or in the well area open and visible to anyone in the driver's seat, doesn't change or control the Court's conclusions of law as to whether or not [appellant] possessed the drugs.

The judge went on to emphasize several other facts that established appellant's constructive possession of the marijuana: "the fact that [appellant] is the sole occupant in the car"; "the strong odor of marijuana in the vehicle," which would have made appellant "aware of the presence of drugs in the car"; the location of "the drugs in a part of the car directly next to [appellant], right in the console area, whether it's lidded or not, immediately at

hand"; appellant's "knowing statement to Sergeant Chagnon upon being told of the one [Z]ip[ ]loc [bag] being found in the console area, that there are ten more in the trunk, revealing knowledge of the additional drugs"; the similarity of the Ziploc bags of marijuana found in the trunk with the one found in the console area; the "sizeable amount of cash" on appellant's person; and "Truesdale's location, standing by the car, thrusting his hand into the car upon seeing the approach of the police." Judge Keary concluded, "When taken all together, these facts do convince the Court of the [appellant's] knowledge of the marijuana in the car and his intent to control the drugs, and his intent to distribute them, given the undisputed value and packaging of them."[5]

Based on this detailed recitation of the court's findings, we cannot agree with appellant that the inconsistency in Lieutenant Murphy's testimony in the two proceedings violated appellant's due process rights. The inconsistency did not render the probation revocation unreliable because, as Judge Keary noted, whether the marijuana was found inside the lidded center console or in the open area, did not factor into her conclusion that appellant's probation should be revoked because he had possessed the marijuana. Instead, she grounded her determination on several other facts that evidenced appellant's constructive possession of the marijuana found both in the console and the trunk. Quite plainly, then, Lieutenant Murphy's inconsistent testimony was not "at the core" of the government's case, which re-

---

5. The trial court made her findings by a preponderance of the evidence. *See Johnson,* 763 A.2d at 712 (holding that standard for revocation of probation is preponderance of the evidence). The prosecutor had asked that the judge do so applying a "clear and convincing" standard, but the judge declined to do so because of the inconsistency between Lieutenant Murphy's testimony at the PWID trial and at the revocation hearing. Judge Keary's finding was not precluded by Judge Diaz's acquittal on the PWID charge under the stricter standard for criminal conviction. *See id.* at 711 (holding that "neither the doctrines of double jeopardy nor collateral estoppel apply to probation revocation proceedings" after an acquittal on the charge used as basis to revoke probation).

mained, as in the PWID trial, that appellant was in constructive possession of the marijuana found in two locations in the car he was driving, and that he intended to distribute it. As the inconsistency was therefore largely immaterial to the revocation of appellant's probation, we conclude that appellant's due process rights were not violated.

Accordingly, revocation of probation and ordered execution of the previously imposed sentence of the Superior Court of the District of Columbia is hereby

*Affirmed.*

**In re J.H., Appellant.**

**J.H., Appellant,**