**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 47771**

| | |
|---|---|
| STATE OF IDAHO, | ) |
| | ) **Opinion Filed: April 28, 2021** |
| Plaintiff-Respondent, | ) |
| | ) **Melanie Gagnepain, Clerk** |
| v. | ) |
| | ) |
| TALON SCOTT ROSS, | ) |
| | ) |
| Defendant-Appellant. | ) |
| | ) |

Appeal from the District Court of the First Judicial District, State of Idaho, Kootenai County. Hon. John T. Mitchell, District Judge.

Order revoking probation and executing previously suspended sentence, <u>affirmed</u>.

Eric D. Fredericksen, State Appellate Public Defender; Andrea W. Reynolds, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Kacey L. Jones, Deputy Attorney General, Boise, for respondent.

_____

HUSKEY, Chief Judge

Talon Scott Ross appeals from the district court's order revoking probation and executing his previously suspended sentence. Ross argues the district court erred when it found he violated the terms of his probation by committing the crimes of petit theft and injury to child. We affirm the district court's order.

**I.**

**FACTUAL AND PROCEDURAL BACKGROUND**

In 2011, Ross pleaded guilty to robbery, Idaho Code § 18-6501. The district court sentenced Ross to a unified term of ten years, with three years determinate, and retained jurisdiction. The district court recommended that Ross participate in the Correctional Alternative Placement Program (CAPP). Ross completed the CAPP, and the district court suspended the sentence and placed Ross on supervised probation for three years.

1

The State filed four reports of probation violation between 2012 and 2017. Each time, Ross admitted violating his probation, and the district court revoked Ross's probation, imposed his previously suspended sentence, and retained jurisdiction. Following each period of retained jurisdiction, Ross was placed on probation. In 2019, the State filed a fifth report of violation, alleging that Ross violated his probation by committing the crimes of petit theft and injury to child. Ross denied both alleged violations, and the district court held an evidentiary hearing.

The district court found that both allegations had been proven by a preponderance of the evidence. The district court revoked Ross's probation and ordered execution of his previously suspended sentence. Ross timely appeals.

## II.

## STANDARD OF REVIEW

"Review of a probation revocation proceeding involves a two-step analysis. First, it is determined whether the terms of probation have been violated. If they have, it is then determined whether the violation justifies revocation of the probation." *State v. Garner*, 161 Idaho 708, 710, 390 P.3d 434, 436 (2017) (citations omitted).

> With regard to the first step, a district court may revoke probation only upon evidence that the probationer has violated probation. . . . A court's finding that a violation has been proved will be upheld on appeal if there is substantial evidence in the record to support the finding. In the event of conflicting evidence of the violation charged, this Court will defer to the district court to determine the credibility of witnesses.
> As to the second step, the decision whether to revoke a defendant's probation for a violation is within the discretion of the district court. Thus, we review a district court's decision to revoke probation under an abuse of discretion standard.

*State v. Knutsen*, 138 Idaho 918, 923, 71 P.3d 1065, 1070 (Ct. App. 2003) (citations omitted). The State bears the burden of providing satisfactory proof of a violation, though proof beyond a reasonable doubt is not required. *State v. Edelblute*, 91 Idaho 469, 480, 424 P.2d 739, 750 (1967).

## III.

## ANALYSIS

Ross argues the district court erred in finding that he violated his probation in two ways. First, Ross asserts the court erred in finding that Ross committed the crime of petit theft despite Ross's acquittal of the crime following a jury trial. Second, Ross contends the court erred in finding he committed the crime of injury to child because the State did not present any evidence

that Ross acted willfully in causing or permitting his children to be placed in a dangerous situation. Ross has failed to show the district court erred.

**A.    The District Court Did Not Err When It Found Ross Violated His Probation by Committing the Crime of Petit Theft**

The terms of Ross's probation included the following provision: "you shall commit no violations of any law of the United States of America, or of any law of any other country, or of any law of any state, county, city, or other political subdivision." Ross was charged with petit theft but was acquitted after a jury trial. Despite the judgment of acquittal, the district court found by a preponderance of the evidence that Ross violated the above term of his probation by committing petit theft. Ross argues he did not violate the term of probation because he was acquitted of the crime that constitutes the basis for the probation violation allegation. In response, the State argues that the judgment of acquittal is irrelevant, both as a matter of fact and law, and that the district court correctly found that Ross committed petit theft by a preponderance of the evidence. Ross and the State agree that the Idaho appellate courts have not addressed the issue of whether an acquittal of a criminal offense precludes a later finding of a probation violation based on the same underlying conduct.

The United States Supreme Court has held an acquittal in a criminal case does not preclude the government from relitigating an issue when it is presented in a subsequent action governed by a lower standard of proof. For example, in *United States v. One Assortment of 89 Firearms*, 465 U.S. 354 (1984), a gun owner had been acquitted on a charge of dealing firearms without a license. The Court held that the gun owner was still subject to a subsequent civil forfeiture proceeding involving those firearms as neither collateral estoppel nor the Double Jeopardy Clause provided a basis for precluding the civil proceeding. *Id.* at 366. The Court reasoned:

> [The acquittal did] not prove that the defendant is innocent; it merely proves the existence of a reasonable doubt as to his guilt . . . . [T]he jury verdict in the criminal action did not negate the possibility that a preponderance of the evidence could show that [the defendant] was engaged in an unlicensed firearms business.

*Id*. at 361-62. *See also One Lot Emerald Cut Stones and One Ring v. United States*, 409 U.S. 232, 235 (1972) (holding Double Jeopardy Clause did not bar subsequent civil forfeiture proceeding following acquittal in criminal case because of different standards of proof).

A decisive majority of jurisdictions that have addressed the issue have held or acknowledged that an acquittal in a criminal prosecution does not bar finding a probation violation

based on the same underlying conduct.[1]  Generally speaking, the various opinions reason that a criminal trial is a different type of hearing than a probation violation hearing and different burdens of proof and evidentiary requirements apply to each hearing.  The holdings of the majority of cases are consistent with the opinion of the Maryland Court of Appeals:

> [The defendant] errs in asserting that his earlier acquittal on criminal charges precludes revocation.  A verdict of not-guilty is hardly tantamount to a finding that no wrong was done.  [The defendant's] acquittal does not necessarily prove his innocence; rather, it reflects the State's inability to prove its case beyond a reasonable doubt.

*Gibson v. State*, 616 A.2d 877, 881 (Md. 1992).

Because the burdens of proof differ, collateral estoppel does not apply.  *One Assortment of 89 Firearms*, 465 U.S. at 361-62; *see also Gibson*, 616 A.2d at 881.  Similarly, various courts have held that the Double Jeopardy Clause does not apply to probation violation proceedings because the defendant is not being tried twice for the same offense.  *In re Coughlin*, 545 P.2d 249, 260-61 (Cal. 1976); *Knecht v. State*, 85 N.E.3d 829, 835 (Ind. Ct. App. 2017); *Johnson v. State*, 235 S.E.2d 550, 552 (Ga. Ct. App. 1977); *People v. Colon*, 866 N.E.2d 207, 222-23 (Ill. 2007).  Consequently, there are no constitutional prohibitions on finding a probation violation based on a preponderance of the evidence for the same conduct for which there is an acquittal in a criminal case.  As a result, even when the defendant is acquitted of the underlying crime leading to the probation revocation proceeding, probation may still be revoked based on a finding by a preponderance of the evidence that the defendant committed the act.  *State v. Benjamin*, 9 A.3d 338, 345 (Conn. 2010).

Like other jurisdictions, Idaho has recognized the difference between a criminal trial and a probation revocation hearing.  In *State v. Rose*, 144 Idaho 762, 171 P.3d 253 (2007), the Idaho

---

[1]    *See Antinarelli v. State*, 268 So. 3d 1002, 1003 (Fla. Dist. Ct. App. 2019); *State v. Benjamin*, 9 A.3d 338, 345 (Conn. 2010); *Vaughn v. State*, 962 P.2d 149, 152 (Wyo. 1998); *State v. Smith*, 721 A.2d 847, 848 (R.I. 1998); *Gibson v. State*, 616 A.2d 877, 881 (Md. 1992); *People v. McEntyre*, 339 N.W.2d 538, 540 (Mich. Ct. App. 1983); *State ex rel. Cooper v. Hutcherson*, 684 S.W.2d 857, 858 (Mo. App. W.D. 1984); *Knecht v. State*, 85 N.E.3d 829, 836 (Ind. Ct. App. 2017); *People v. Ruff*, 854 N.Y.S.2d 787 (N.Y. App. Div. 2008); *Farmer v. State*, 449 P.3d 1116, 1127 (Alaska Ct. App. 2019); *Ward v. Smith*, 573 P.2d 781, 782 (Utah 1978); *Johnson v. United States*, 763 A.2d 707, 709 (D.C. 2000); *State v. Monroe*, 349 S.E.2d 315, 317 (N.C. Ct. App. 1986); *Stallworth v. State*, 21 So. 3d 84, 86 (Fla. Dist. Ct. App. 2009); *People v. Colon*, 866 N.E.2d 207, 224 (Ill. 2007); *In re Coughlin*, 545 P.2d 249, 255 (Cal. 1976); *State v. Jameson*, 541 P.2d 912, 915 (Ariz. 1975) (disapproved on other grounds by *State v. Ojeda*, 769 P.2d 1006, 1008 (Ariz. 1989)); *State v. Eckley*, 579 P.2d 291, 293 (Or. Ct. App. 1978).  *See also Cruz v. State*, 990 A.2d 409, 411-16 (Del. 2010); *Johnson v. State*, 235 S.E.2d 550, 552 (Ga. Ct. App. 1977).

Supreme Court noted that probationers do not enjoy the full panoply of constitutional rights granted to criminal defendants, a probation revocation hearing is not a criminal prosecution, and that neither the Sixth Amendment's confrontation clause nor the Idaho Rules of Evidence apply to probation revocation proceedings. *Id*. at 765-66, 171 P.3d at 256-57.

Only one jurisdiction--Pennsylvania--has concluded that an acquittal of the charges that served as the basis for a probation violation precludes finding a violation. *Commonwealth v. Giliam*, 233 A.3d 863, 867 (Pa. 2020). In Pennsylvania, a defendant's probation can be revoked only upon finding a defendant violated a specific term of probation or committed a new crime. *Id*. at 867. There, the Court held that "because Giliam's violation of probation was based solely on allegations of new criminal charges for which he was later acquitted, ultimately, no violation of probation occurred." *Id.* at 868.

Notwithstanding Pennsylvania's position on the issue, we agree with the reasoning adopted by the majority of jurisdictions and hold that an acquittal in a criminal proceeding does not bar revocation of probation based on the same conduct. Having determined that the judgment of acquittal did not prohibit the district court from finding that Ross violated his probation by committing petit theft, we turn our analysis to whether this finding is supported by a preponderance of the evidence.

On appeal, Ross concedes that the district court arguably could have found the State proved that Ross committed the crime of petit theft, but for the judgment of acquittal. Because the judgment of acquittal has no preclusive effect, Ross's concession resolves the issue. Even without Ross's concession, the evidence adduced at the probation revocation hearing provided the district court with sufficient evidence that Ross violated a term of his probation by committing petit theft.

Brian Lux, the owner of a "vape" store testified. Lux said he met Ross through Emily Vanvalkenberg, who worked at the store. Lux was reviewing video surveillance of the store from November 2019 when he became aware of a possible theft. Lux saw Ross enter the store with Vanvalkenberg, who was not scheduled to work that day. Lux saw Ross reach behind a display case, take a device, and put it in his pocket. Ross also took a jar of Kratom and a vape pen and put both items in his pocket. Ross left the store without paying for the items. Lux testified that the items Ross took were the property of the store; he did not give Ross permission to take them; and his employees did not have permission to allow Ross to take the items without paying for them.

5

The State called Officer Jacob Brazle to testify. Officer Brazle testified that he responded to the store for a potential theft. He reviewed the surveillance video and saw Ross take two items and hide them in his clothing. Lux informed Officer Brazle that the items were a container of Kratom and an Orion Q vape pen. Officer Brazle spoke with Ross about the incident. Ross admitted to Officer Brazle that he had been in the store and did not make any purchases. Ross also stated that he had been given a vape pen by an employee and that he had been given a different vape pen on an earlier date. Ross told Officer Brazle that Vanvalkenberg knew that he had taken the Kratom and that Roxanne Bujko, the employee working during the alleged theft, also knew that he had taken the vape pen. Officer Brazle told Ross that he had reviewed the surveillance video, and Ross began to cry. When Officer Brazle described the video, Ross admitted to taking the items and said they were at his home.

Officer Brazle further testified that he spoke with Bujko who said she was not aware that Ross had taken the Kratom and the vape pen. Bujko testified that she was working at the store when Ross and Vanvalkenberg came in. Bujko said that Ross helped her stock shelves so she gave him a Zebra F vape pen, which she paid for. Bujko explained that the Zebra F vape pen is a different vape pen than the Orion Q. Bujko also testified that she did not give Ross the Kratom or an Orion Q vape pen.

The State called Vanvalkenberg who testified that she and Ross went to the store on November 13, 2019, and that Lux had given her permission to take the Kratom. Vanvalkenberg said she asked Ross to take the Kratom for her and he did.

Ross testified in his defense at the probation violation evidentiary hearing. Ross testified that he went to the store with Vanvalkenberg and helped Bujko stock shelves. According to Ross, Bujko gave him a vape pen in return for his help and told him she would pay for it. Ross took the Kratom for Vanvalkenberg, believing that she had been given permission to take it. Ross also introduced his judgment of acquittal entered after a jury trial on the petit theft charge.

The district court considered the evidence, including Ross's judgment of acquittal, and stated that it did not find Ross, Bujko, or Vanvalkenberg to be credible. The district court also said it understood Ross's testimony to be that he took, but did not steal, the items, which it found to be an inherently incredible claim, especially in light of Officer Brazle's testimony that Ross began to cry when confronted with the theft. Based on the evidence and Ross's concession on

6

appeal, this Court concludes that the district court's finding that Ross violated his probation by committing the crime of petit theft is supported by substantial evidence.

**B.**     **The District Court Did Not Err When It Found Ross Violated His Probation by Committing the Crime of Injury to Child**

Ross argues the State failed to present any evidence that he acted willfully in causing or permitting his children to be placed in a dangerous situation. The State asserts that the testimony at the evidentiary hearing established that Ross willfully permitted his children to be placed in a dangerous situation and that, as such, the district court properly concluded that Ross violated his probation by committing the crime of injury to child.

The crime of injury to child is defined in Idaho Code § 18-1501(1), which provides:

> Any person who, under circumstances or conditions likely to produce great bodily harm or death, willfully causes or permits any child to suffer, or inflicts thereon unjustifiable physical pain or mental suffering, or having the care or custody of any child, willfully causes or permits the person or health of such child to be injured, or willfully causes or permits such child to be placed in such situation that its person or health is endangered, is punishable by imprisonment in the county jail not exceeding one (1) year, or in the state prison for not less than one (1) year nor more than ten (10) years.

For purposes of the statute, "willfully" is defined as "acting or failing to act where a reasonable person would know the act or failure to act is likely to result in injury or harm or is likely to endanger the person, health, safety or well-being of the child." I.C. § 18-1501(5). The willful element "requires that the person providing care or custody of the child willfully endanger the child by subjecting the child to a known risk of harm." *State v. Morales*, 146 Idaho 264, 267, 192 P.3d 1088, 1091 (Ct. App. 2008). "This does not require that the defendant intended to harm the child, but it does require that the defendant placed the child in a potentially harmful situation with knowledge of the danger." *Id.*

At Ross's evidentiary hearing, a woman testified that on the morning of November 14, 2019, she saw two young girls run across the street towards an attorney's office where she was sitting in the waiting area. The children looked to be about one and four years old and were not accompanied by an adult. The children crossed the street, came to the glass doors of the attorney's office, and tapped on the window to be let inside. The woman let the children into the office and still did not see an adult with them. The temperature outside was around thirty degrees. The woman testified that both girls were cold to the touch and dressed in minimal clothing; the older child was wearing a t-shirt and no pants, the younger child was wearing only a diaper, and neither

7

child was wearing shoes. The woman asked the older child where her mother was, and the child said her mother was sleeping and pointed across the street to the direction she had come from. Police were notified of the situation.

Next, a child protection worker, Shadra Aragon, testified. Aragon knew Ross and Taylor Tottenham to be the parents of the two girls from a case involving Ross and Tottenham a few years prior and based on a similar referral the previous week. Aragon testified that on November 8, 2019, she received a referral for failure to supervise after Ross's children were left alone outside. On November 13, 2019, Aragon went to Ross's home and spoke with Ross and Tottenham. They discussed the family's current living situation and status, and Aragon observed the children. They also discussed the referral Aragon had received in response to the children being left alone outside. Ross and Tottenham explained that the children had gotten out through the sliding back door and that it would not happen again.

The next day, November 14, 2019, Aragon was contacted by law enforcement and responded to the attorney's office. Aragon recognized the children and explained to law enforcement that a similar event had happened just a few days prior. Aragon accompanied law enforcement to Ross's home in an attempt to make contact with the children's parents. Aragon said that when she arrived at the home, she did not know if the back door was open, but she believed the children had left the house using the back door.

Officer Henry Dunham, the responding officer, also testified. Dunham responded to the attorney's office after receiving a call for a welfare check on two small children. After going to the office, Dunham went to Ross's home. Dunham testified that he knocked on the front door of the home for about five minutes before Ross's roommate answered the door. Sometime later, Tottenham came to the door, followed by Ross. Dunham testified that he spoke with Ross who said he was unaware that his children had left the house because he had been asleep. At the time Dunham made contact with Ross, the children had been gone for about two hours.

Ross argues the State failed to present evidence that Ross placed his children in a potentially harmful situation with knowledge of the danger. Ross claims that the fact that his children were endangered by a lack of supervision is not enough to show he had knowledge of the danger. We disagree.

On November 13, 2019, the day before the events in this case, Ross spoke with Aragon about the danger of his children getting out of the house if left unsupervised. Ross was aware that

8

his children had left the house using the sliding back door. He recognized the risk of allowing his children to have unsupervised access to the back door, and he assured Aragon that it would not happen again. Ross's conversation with Aragon establishes that Ross had knowledge of the potentially harmful situation created by failing to ensure his children were properly supervised. Despite that knowledge, on November 14, 2019, nothing in the record indicates that Ross took any affirmative steps to ensure his children were supervised while he slept. He did nothing to prevent his children from leaving unaccompanied through the back door, and he did not take any steps to ensure his children were supervised by one of the other adults while he slept. Under these circumstances, a reasonable person would know that such a failure was likely to result in injury or harm or was likely to endanger the health, safety, or well-being of his children, As such, Ross's failure to act was willful. The district court's finding that Ross violated his probation by committing the crime of injury to a child is supported by a preponderance of the evidence, and the district court did not err in reaching this conclusion.

Ross does not challenge the second part of the analysis--whether the district court abused its discretion when it revoked Ross's probation and ordered into execution the previously suspended sentence--other than to claim that the Court should remand for reconsideration of the revocation decision if we conclude that the district court erred in finding one of the violations. Because we have concluded that the district court did not err in finding either violation, we need not address whether remand would be the proper remedy if we reached a contrary conclusion. As a result, this Court affirms the district court's decision to revoke Ross's probation.

## IV.

## CONCLUSION

We hold that an acquittal in a criminal proceeding does not bar a finding that a probationer violated a term of his probation based on the same underlying conduct. Additionally, there is substantial evidence in the record to support the district court's finding, by a preponderance of the evidence, that Ross violated his probation by committing the crimes of petit theft and injury to child. Accordingly, the district court's order revoking Ross's probation and executing his previously suspended sentence is affirmed.

Judge LORELLO and Judge BRAILSFORD **CONCUR**.

9