**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2021 IL App (3d) 200323-U

Order filed September 29, 2021

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2021

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 10th Judicial Circuit, Tazewell County, Illinois, |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | Appeal No. 3-20-0323 Circuit No. 19-CM-707 |
| | ) | |
| DANIEL TROYER, | ) ) | Honorable James A. Mack, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE DAUGHERITY delivered the judgment of the court.
Justices O'Brien and Wright concurred in the judgment.

_____

**ORDER**

¶ 1      *Held*:    The State failed to prove defendant guilty beyond a reasonable doubt.

¶ 2      Defendant, Daniel Troyer, appeals his conviction for violating an order of protection. He argues that the State failed to prove beyond a reasonable doubt that he intentionally violated the order of protection. We reverse.

¶ 3                             I. BACKGROUND

¶ 4 The State charged defendant with violating an order of protection (720 ILCS 5/12-3.4(a)(1) (West 2018)). The charging instrument alleged that defendant intentionally violated the order of protection, which he had knowledge of, by being present within 50 feet of J.H.

¶ 5 The matter proceeded to a bench trial. The parties stipulated that an order of protection had been issued requiring defendant to stay at least 50 feet away from J.H. and that defendant had knowledge of the order. The evidence showed that on the relevant day, defendant twice entered a restaurant where J.H. and her father were eating. He initially entered and checked at the bar "if there was a wait on chicken wings" and returned later to sit down and dine in the dining area.

¶ 6 Surveillance footage from inside the restaurant, taken from multiple angles, was admitted into evidence. It shows that the restaurant is laid out in an L-shape, with the bar area and dining area in separate rooms. The entrance is located at the intersection of the L, facing into the dining area. J.H. and her father sat across from each other in the back of the dining area, farthest from the entrance. J.H.'s father sat with his back to the entrance such that he was between her and the door.

¶ 7 J.H. testified that when defendant entered the restaurant the first time, they made eye contact. She agreed there was a television above her head but noted that she was able to tell the difference between someone looking in her eyes and someone looking above her head.

¶ 8 The surveillance footage shows defendant enter the restaurant. He stands by the doorway for a few seconds and looks into the bar area, straight forward, and then into the dining area. Defendant steps into the dining area to engage in conversation with two individuals seated at a table. A testifying officer opined that that table was approximately 20 feet from J.H.'s table. The footage appears to show him looking down at the seated individuals. After 15 seconds of

2

conversation, defendant turns, walks into the bar area, and approaches the bar. Defendant leaves the restaurant less than one minute later.

¶ 9　　　　Approximately 15 minutes later, defendant returns to the restaurant with a companion, and they enter the dining area. The companion proceeds to a table diagonally adjacent to J.H.'s table. Defendant stops short of that location to retrieve silverware from the bar. While defendant is retrieving the silverware, J.H.'s father stands up from the table. As defendant turns away from the bar, J.H. stands. At that time, it appears defendant is looking directly at J.H. Defendant does a pronounced double take as he sits at his table. J.H. and her father walk to the exit and leave the restaurant within 15 seconds.

¶ 10　　　　The court found that the most credible evidence it had was the video footage. It determined that the State did not prove beyond a reasonable doubt that defendant knew J.H. was in the restaurant or saw her the first time he entered the bar. The court further found that based on defendant's reaction, the first time defendant saw J.H. was when he sits down at the table and J.H. was leaving the restaurant. The court stated that defendant did not offer to leave and did not know why J.H. was leaving. It concluded that "[w]hen he realized that she was there, he should have made every attempt to leave, and he didn't do that. Because of that, I'm going to find that he intentionally violated the Statute and I am going to find him guilty." The court sentenced defendant to 24 months' probation. Defendant appeals.

¶ 11　　　　　　　　　　　　　　　　II. ANALYSIS

¶ 12　　　　Defendant argues that the State failed to prove beyond a reasonable doubt that he intentionally violated the order of protection. He further challenges aspects of his sentence.

¶ 13　　　　When assessing the sufficiency of the evidence, this court determines whether the evidence, when viewed in the light most favorable to the State, would permit any rational trier of

3

fact to find that the State proved the elements of the offense beyond a reasonable doubt. *People v. Ross*, 229 Ill. 2d 255, 272 (2008). "This standard of review does not allow the reviewing court to substitute its judgment for that of the fact finder on questions involving the weight of the evidence or the credibility of the witnesses." *People v. Jackson*, 232 Ill. 2d 246, 280-81 (2009). "When contradictory testimony which could support conflicting conclusions is given at a bench trial, we will not disturb the trial court's factual findings based on that testimony unless a contrary finding is clearly apparent." *People v. Hayashi*, 386 Ill. App. 3d 113, 123 (2008).

¶ 14    To prove defendant guilty of violating a protective order beyond a reasonable doubt, the State needed to prove that he "knowingly commit[ted] an act which was prohibited by a court." See 720 ILCS 5/12-3.4(a)(1) (West 2018). "[A] violation of a stay-away order does not encompass aimless, unintentional, or accidental conduct." *People v. Mandic*, 325 Ill. App. 3d 544, 549 (2001).

¶ 15    Here, the court found that defendant did not see J.H. the first time he entered the restaurant, and we cannot say that the opposite conclusion is "clearly apparent." Thus, we will not disturb that finding. See *Hayashi*, 386 Ill. App. 3d at 123. Similarly, we will not disturb the court's finding that the first time defendant noticed J.H. was when he sits down at the table. Further, the court necessarily found J.H.'s testimony about making eye contact incredible and there is no basis in the record to dispute that finding.

¶ 16    We now turn to the question of whether defendant violated the order of protection after he noticed J.H. The circuit court's reasoning indicates it concluded that defendant initially accidentally violated the order of protection but because defendant did not act promptly enough to rectify the situation—by leaving, offering to leave, or inquiring as to why J.H. was leaving— he intentionally violated the order. While the conclusion that defendant initially accidentally

4

violated the order of protection is supported by the record, the determination that it morphed into an intentional violation is not. Specifically, as the circuit court determined, when defendant noticed J.H., she was already in the process of leaving. Moreover, the court's suggestions that defendant offer to leave or inquire as to why J.H. was leaving are untenable, as those actions would put him in clear, and intentional, violation of the order of protection. In sum, the State failed to prove beyond a reasonable doubt that defendant intentionally acted to violate the order of protection or intentionally failed to act to rectify any accidental violation. Therefore, we reverse defendant's conviction outright. See *People v. Thompson*, 2017 IL App (3d) 160503, ¶ 17 (stating that if the evidence was insufficient to convict, then a defendant's conviction must be reversed outright). Because we reverse defendant's conviction, we need not address his sentencing issue.

¶ 17                                          III. CONCLUSION

¶ 18          The judgment of the circuit court of Tazewell County is reversed.

¶ 19          Reversed.