**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2022 IL App (3d) 200322-U

Order filed February 25, 2022

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2022

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 10th Judicial Circuit, Tazewell County, Illinois, |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | Appeal No. 3-20-0322 Circuit No. 18-CM-73 |
| DANIEL L. TROYER, | ) ) ) | Honorable James Mack, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE McDADE delivered the judgment of the court.
Justices Lytton and Schmidt concurred in the judgment

**ORDER**

¶ 1        *Held*:  The State failed to sufficiently prove that defendant violated the terms of his probation.

¶ 2        Defendant, Daniel L. Troyer, appeals following the trial court's order granting the State's petition to revoke his probation. He argues that the State failed to prove by a preponderance of the evidence that he violated the terms of his probation. We reverse the court's judgment revoking defendant's probation.

¶ 3                                   I. BACKGROUND

¶ 4        On July 17, 2018, defendant pled guilty to disorderly conduct (720 ILCS 5/26-1(a)(1) (West 2018)). The information in that case alleged that defendant looked through a bathroom window, knowing that 13-year-old J.H. was undressing inside. The court sentenced defendant to a term of 18 months' probation.

¶ 5        During the pendency of the proceedings on the disorderly conduct charge, an order of protection was entered requiring defendant to stay 50 feet away from J.H.

¶ 6        On September 20, 2019, defendant was charged with violating that order of protection (*id*. § 12-3.4(a)(1)). The same day, the State filed a petition to revoke defendant's probation. The petition alleged that defendant violated the term of his probation requiring that he not violate any criminal statutes. The petition alleged that defendant had been within 50 feet of J.H., which violated the order of protection, a criminal statute barring such violations, and, thus, the terms of his probation.

¶ 7        The matter proceeded to a bench trial. The evidence showed that J.H. and her father were eating at a restaurant on the day in question. While they dined, defendant twice entered the restaurant—once to order his meal, and again 15 minutes later to sit down to eat with a companion.

¶ 8        Extensive surveillance footage from inside the restaurant was introduced at trial. The footage shows that the restaurant is laid out in an L-shape, with the bar area and the dining area in separate wings. The entrance door is located at the intersection of the L, facing into the dining area. J.H. and her father are seen seated at the back of the dining area, farthest from the door. J.H.'s father was seated with his back to the door while J.H. sat across from him, such that her father was situated between J.H. and the door.

2

¶ 9    When defendant first enters the restaurant, he pauses in the doorway and looks into the bar area. He then turns his gaze to the dining area, where an elderly person is waving to him. Defendant takes six steps into the dining area and engages in a conversation with two seated elderly people. The table at which defendant conversed is located at the front of the dining area, approximately 20 feet from J.H.'s table in the back. A separate angle of defendant's conversation with the elderly people shows him looking down at them, rather than up or in J.H.'s direction. After 15 seconds of conversation, defendant leaves the dining area and approaches the bar. Following brief conversations with other patrons and the bartender, defendant leaves the restaurant.

¶ 10    Defendant returns to the restaurant with his companion 15 minutes later. They enter the dining area. The companion proceeds to a table diagonally adjacent to J.H.'s table. Defendant stops short of that location to reach onto or over the bar to retrieve silverware. While defendant is facing the bar, J.H.'s father stands up from their table. As defendant turns away from the bar, J.H. rises as well. J.H. and her father begin walking in the direction of the door while defendant takes his seat at the table. In this moment, defendant appears to be looking directly at J.H. He does a pronounced double take as he sits at his table. J.H. and her father walk past defendant's table toward the exit and are out of the room within 15 seconds.

¶ 11    J.H. testified that she and defendant made eye contact when defendant entered the restaurant the first time. J.H. testified that the light from outside did not impair her ability to observe defendant. She agreed that there was a television above her head and slightly behind her where she sat but opined that she was able to tell the difference between someone looking in her eyes and someone looking above her head.

3

¶ 12        In closing, the State argued that defendant saw J.H. when he entered the restaurant the first time. It pointed out her testimony that they made eye contact at that moment and argued that the video showed him looking J.H.'s direction. The State concluded that defendant violated the order of protection when he returned to the restaurant 15 minutes later, knowing J.H. was there.

¶ 13        The court found defendant guilty. It observed that the surveillance footage was the most credible evidence in the case. The court found that the State had failed to prove beyond a reasonable doubt that defendant had seen J.H. when he originally entered the restaurant, such that his second entrance was an intentional violation of the order of protection.

¶ 14        However, the court found that defendant realized J.H. was in the restaurant for the first time as he was sitting down in the dining area upon his second entrance. The court faulted defendant for not offering to leave instead of J.H., pointing out that defendant did not know whether J.H. was leaving because she was done eating or to avoid him. The court opined that defendant should have been the one to leave the restaurant. At sentencing, the court reiterated these sentiments, pointing out that defendant did not "take any action to prevent [J.H.] from having to leave [or] to find out why [J.H.] was leaving." It emphasized that defendant could not "sit around and wait" to see what J.H. was going to do.

¶ 15        Immediately following the court's verdict, the parties asked that the court take judicial notice of the just-completed proceedings in order to rule on the State's petition to revoke probation. Defendant stipulated that the evidence pertaining to that petition would be the same as the evidence presented in the bench trial. The court found defendant in violation of the terms of his probation and granted the State's petition to revoke.

¶ 16    At the ensuing sentencing hearing, the court sentenced defendant to 24 months' probation for violating an order of protection and resentenced him to 18 months' probation for disorderly conduct.

¶ 17                                II. ANALYSIS

¶ 18     On appeal, defendant argues that the State failed to prove by a preponderance of the evidence that he violated the terms of his probation.

¶ 19    Defendant appealed his criminal conviction for violating an order of protection in a separate appeal. *People v. Troyer*, 2021 IL App (3d) 200323-U. In that appeal, this court reversed defendant's conviction, finding that the State had failed to produce evidence that would allow any rational trier of fact to conclude beyond a reasonable doubt that defendant had intentionally violated the order of protection. *Id.* ¶ 16. In reaching that result, we separately rejected each of the two theories upon which defendant was purportedly guilty of the offense.

¶ 20    First, this court addressed the State's theory of guilt—proffered both at trial and in the appeal—specifically, that defendant had seen J.H. upon his first entry into the restaurant, such that he violated the order of protection immediately upon his later entry. *Id.* ¶ 15. We pointed out that the trial court had explicitly found that defendant saw J.H. for the first time in the restaurant only upon sitting down with a companion on his second entry. *Id.* Finding no basis upon which we would disturb that factual determination, or the related implicit finding that J.H.'s testimony was not credible, we concluded that defendant's conviction could not be sustained on appeal on that theory. *Id.*

¶ 21    We then addressed the theory put forth by the trial court in finding defendant guilty, namely, that "defendant initially accidentally violated the order of protection but because defendant did not act promptly enough to rectify the situation—by leaving, offering to leave, or

inquiring as to why J.H. was leaving—he intentionally violated the order." *Id.* ¶ 16. We concluded that such a theory, as a matter of law, could not support a conviction for violation of an order of protection. *Id.* We stated:

> "While the conclusion that defendant initially accidentally violated the order of protection is supported by the record, the determination that it morphed into an intentional violation is not. Specifically, as the circuit court determined, when defendant noticed J.H., she was already in the process of leaving. Moreover, the court's suggestions that defendant offer to leave or inquire as to why J.H. was leaving are untenable, as those actions would put him in clear, and intentional, violation of the order of protection." *Id.*

¶ 22        In order to prove defendant guilty of violating an order of protection, the State was obligated to prove that he "knowingly commit[ted] an act which was prohibited by a court." 720 ILCS 5/12-3.4(a)(1) (West 2018). "[A] violation of a stay-away order does not encompass aimless, unintentional, or accidental conduct." *People v. Mandic*, 325 Ill. App. 3d 544, 549 (2001). Where the State moves to revoke a defendant's probation, it must only prove a probation violation by a preponderance of the evidence. *People v. Colon*, 225 Ill. 2d 125, 139 (2007).

¶ 23        Initially, the State urges that willfulness is not an element of a probation violation, and that probation may be revoked due to nonculpable conduct. See, *e.g.*, *People v. Konwent*, 405 Ill. App. 3d 794, 798 (2010). It therefore asserts that even proof of an accidental violation of the order of protection is sufficient to revoke defendant's probation.

¶ 24        While that proposition of law is accurately recited by the State, it is irrelevant in the instant case. The lone probation term defendant was accused of violating was that directing him to not violate any criminal statute. The criminal statute prohibiting the violation of an order of

6

protection may only be violated through knowing and intentional conduct. Thus, the State was obligated to prove such a mental state in order to prove the charged probation violation.

¶ 25        Whether defendant intentionally violated the order of protection (and thus violated a criminal statute) was central to both defendant's criminal trial and the probation revocation proceedings. However, because of the lower standard of proof required for probation revocation, this court's prior determination that the State failed to prove that offense beyond a reasonable doubt does not directly control the outcome here. *E.g.*, *Colon*, 225 Ill. 2d at 155-59. Nevertheless, the rationale employed in that appeal is highly relevant.

¶ 26        When reviewing probation revocation proceedings, we must defer to the trial court's findings of fact and determinations of witness credibility unless those findings or determinations are against the manifest weight of the evidence. *People v. Duplessis*, 248 Ill. App. 3d 195, 200 (1993). In the instant case, the trial court determined that defendant saw J.H. for the first time as he sat down to eat, on his second entry into the restaurant. This conclusion was based on the extensive surveillance footage from within the restaurant, which the court described as the most credible evidence in the case. The footage fails to definitively show any moment in which defendant, upon his first entry into the restaurant, looks directly at J.H. Accordingly, we cannot say that the court's factual determination was contrary to the manifest weight of the evidence. It follows that defendant's second entry into the restaurant was not itself an intentional violation of the order of protection, and, thus, not a violation of the terms of his probation.

¶ 27        We turn next to the theory that defendant violated the order of protection by either failing to leave after he noticed J.H. or by failing to ascertain why she was leaving. In defendant's previous appeal, we opined that, given the evidence in the case, the trial court's theory of

7

defendant's guilt was legally untenable. That holding was not based on the reasonable doubt standard, and therefore applies with equal force in this appeal.

¶ 28 The video evidence in this case showed that defendant saw J.H.—for the first time, according to the trial court—when she and her father had stood from their table and begun walking toward the exit. Even assuming that a defendant is obligated to rectify his unintentional violation of an order of protection, defendant here knew that his violation would be imminently resolved by J.H.'s exit. The trial court's suggestions that defendant offer to leave the restaurant or inquire as to why J.H. was leaving are unreasonable; as we stated before, such acts would put defendant in clear violation of the order of protection. Likewise, had defendant opted to exit the restaurant immediately upon noticing J.H., that choice would have resulted in him following her and her father out of the building—not only a clear violation of the order of protection, but far more troubling conduct.

¶ 29 We therefore reiterate that defendant's inaction upon first noticing J.H. as she was leaving the restaurant cannot be construed as an intentional violation of the order of protection. See *Troyer*, 2021 IL App (3d) 200323-U, ¶ 16. As the commission of that criminal offense was the only grounds upon which the State alleged defendant violated the terms of his probation, we reverse the trial court's order revoking defendant's probation.

¶ 30                                  III. CONCLUSION

¶ 31 The judgment of the circuit court of Tazewell County is reversed.

¶ 32 Reversed.